OPINION OF THE COURT
Andrew V. Siracuse, J.
This action arises out of an alleged overpayment of no-fault benefits to defendant James Brooks by plaintiff State Farm Mutual Automobile Insurance Companies (hereinafter State Farm). The plaintiff moves for summary judgment pursuant to CPLR 3212. The defendant cross-moves for dismissal pursuant to CPLR 3211 (subd [a], pars 1, 7) for failure to state a cause of action. Although the defendant’s papers are styled as a motion to dismiss, it is clear that, issue having been previously joined by the service of defendant’s amended answer to plaintiff’s amended complaint, the motion is in fact a motion for summary judgment. (CPLR 3211, subd [a], par 7.)
Ordinarily, the court would be required to notice the parties that such a procedural change was necessary. Plaintiff, however, has already moved for summary judgment. A summary judgment motion "surveys the pleadings.” Upon motion for summary judgment by one party, the court may grant it to either party. (Manhattan Gear & Instrument Co. v 2350 Linden Blvd. Corp., 27 AD2d 570.) Notice by the court regarding its intention to treat defendant’s motion as a motion for summary judgment is not necessary as both parties are already on notice. (Manhattan Gear & Instrument Co. v 2350 Linden Blvd. Corp., supra.)
On August 24, 1976, the defendant James Brooks was a passenger in an automobile owned by Lorenzo Isaac. The automobile was involved in a collision with another vehicle and the defendant James Brooks sustained personal injuries, including a fracture of his left arm. The Isaac’s automobile *706 was insured by the plaintiff State Farm. The defendant James Brooks applied for "first-party benefits” from the plaintiff State Farm under the Comprehensive Automobile Insurance Reparations Act (Insurance Law, § 670 et seq.).
At the time of the accident, the defendant James Brooks was employed by the City of Rochester as a laborer and earned $181.90 per week. Section 671 (subd 1, par [b]; subd 2, par [a]) and section 672 (subd 1, par [a]) of the Insurance Law require the plaintiff State Farm to pay to the defendant 80% of his lost earnings. In accord with these provisions, the plaintiff State Farm paid $145.52 (80% of $181.90) per week to the defendant James Brooks. The plaintiff began these payments as of the date of the accident and continued the payments through April 11, 1977.
On April 11, 1977, the plaintiff received a wage verification statement from defendant’s employer, which indicated that the defendant had been furloughed from his job as of October 3, 1976. The plaintiff also received a copy of a letter sent to the defendant, dated September 17, 1976, informing him about the layoff. These letters, read in context, clearly indicate that the defendant’s layoff was due to lack of work (and the defendant’s lack of seniority), rather than the defendant’s inability to do the required work as a result of his injury.
After his lay off, the defendant applied for unemployment benefits. The defendant’s application was denied because he was unable to work as a result of the injuries he sustained in the accident. The defendant never notified the plaintiff about the layoff. The defendant received $145.52 per week for lost wages until April 11, 1977. As of that date, his disability ceased and he began to collect unemployment benefits.
The plaintiff asserts that under 11 NYCRR 65.6 (n) (2) (vi) it was obligated to pay to the defendant only the amount that he would have received in unemployment benefits rather than 80% of his wages at the time of the accident.[1] Section 65.6 (n) (2) (vi) of title 11 provides:
"Loss of earnings. In determining loss of earnings from work: * * *
"(vi) If an applicant, while disabled, is discharged from employment, benefits shall cease if the position would have *707 been lost had the accident not occurred (e.g., plant shutdown, strikes, etc.). However, the insurer shall reimburse the applicant for benefits lost which would have been received had he not been disabled (e.g., union strike benefits, unemployment, etc.).”
The plaintiff maintains that the defendant fraudulently failed to advise it about his layoff. The plaintiff therefore claims that it erroneously overpaid the defendant as a result of a mistake of fact. The plaintiff initiated this action to recover the alleged overpayment of $1,417.52 plus interest.
The defendant denies that he was overpaid. The defendant argues that section 671 (subd 1, par [b]; subd 2, pars [a], [b]) of the Insurance Law are exclusive and controlling. These subsections define the relevant portions of "Basic economic loss” and "First-party benefits” as:
"(b) loss of earnings from work which the injured person would have performed had he not been injured * * *
"2. 'First party benefits’ means payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle, less;
"(a) twenty percent of lost earnings pursuant to paragraph (b) of subdivision one of this section;
"(b) amounts recovered or recoverable on account of such injury under state or federal laws providing social security disability benefits, or workmen’s compensation benefits, or disability benefits under article nine of the workmen’s compensation law, or medicare benefits”. (Emphasis supplied.)
The defendant correctly states that the section does not even mention unemployment benefits and does not provide for a reduction based on unemployment benefits. The defendant therefore argues that if 11 NYCRR 65.6 (n) (2) (vi), as promulgated by the Superintendent of Insurance, limits his recovery to lost unemployment benefits, then it is invalid because it conflicts with the statute.
This appears to be a case of first impression. The court has made an extensive search of the law in New York as well as other no-fault jurisdictions, but has found no other interpretation of these particular rules and regulations or any analogous to them.
There are several decisions reported in the New York No-Fault Arbitration Reports that deal with the question of *708 unemployment insurance vis-á-vis no-fault payments.[2] These decisions are, however, distinguishable on their facts from the instant case, and there is no discussion of the relevant statutory provisions. For example, in NF-202, 1978, the arbitrator held that the discontinuance of wage-loss benefits by the insurance company was improper where the recovered claimant applied for his former job and was rejected because it was no longer available. "I hold a fair interpretation of basic economic loss as follows: where injury covered by no-fault has caused the claimant to sustain loss of earnings and loss of position; [the insured] shall pay claimant loss of earnings sustained during that period of employment less set-off of unemployment benefits. Good faith effort must be made by claimant to find employment.” Similarly, in NF-129, 1977, a partial disability caused by the automobile accident lessened the claimant’s earning capacity in that he was prevented from working at his former job as a window washer, even though he was able to work at a less strenuous position. No-fault wage loss benefits were granted therefor at the rate of pay of his window washer job less the amount of claimant’s unemployment insurance. Also, in NF-14, 1977, a 70-year-old watchman, whose reimbursement for lost wages was discontinued when the insurance company received a report from the company doctor stating that it was old age rather than disability which prevented further employment, was held not entitled to further no-fault benefits. The evidence also disclosed that the claimant’s job had been abolished after his accident and that he was receiving Social Security benefits.
Two New Jersey cases also addressed the question of unemployment benefits and no-fault insurance. In both cases, however, the issue was whether a temporarily laid-off worker who was injured while receiving unemployment benefits was an "income producer” within the meaning of the New Jersey No-Fault Law. In Ruhburg v Selected Risks Ins. Co. (147 NJ Super 401) the court held he was not; in Mazza v Insurance Co. of North Amer. (149 NJ Super 60) the court held he was. Thus, the court has found no precedent upon which it can rely.
*709 The interpretation of the law by the Superintendent of Insurance is an important guide for the court. (Kurcsics v Merchants Mut. Ins. Co., 65 AD2d 192.) "The superintendent has wide authority to 'prescribe, in writing, official regulations, not inconsistent with the provisions of this chapter * * * interpreting the provisions of this chapter’. (Insurance Law, § 21.) Further, the superintendent possesses whatever powers may be 'reasonably implied’ from the statute. (Insurance Law, § 10.) * * * Provided that his regulations are not inconsistent with some specific statutory provision, the superintendent may prescribe regulations 'to effectuate any of the powers given to him by law’ * * * including any powers that the statute reasonably implies.” (Ostrer v Schenck, 41 NY2d 782, 785-786.) To the extent that the regulations conflict with the provisions of the statute and are inconsistent with its purpose, they should be given no weight. (Matter of Adams [Government Employees Ins Co.], 52 AD2d 118.)
On its face, 11 NYCRR 65.6 (n) (2) (vi) would appear to describe defendant’s situation and would seem to require this court to find that defendant has been overpaid as maintained by plaintiff. That interpretation alone, however, does not resolve the issue. The question remains as to whether or not such a regulation and interpretation conflicts with the terms and purpose of section 671 of the Insurance Law.
The New York no-fault law was intended to compensate a motor vehicle accident victim quickly for "substantially all of his economic loss * * * without regard to fault.” (Governor’s Memoranda, NY Legis Ann, 1973, p 298; emphasis added; Benedict, New York Adopts No-Fault: A Summary and Analysis, 37 Albany L Rev 662, 671.) The act has basically two purposes: (1) the compensation for basic economic loss without recourse to the courts, as provided in section 671; and (2) the limitation on tort recovery which insures that there will be no duplicate compensation for basic economic loss, as provided in section 673. (Montgomery v Daniels, 38 NY2d 41.)
One of the purposes of the no-fault law is to compensate automobile accident victims for economic loss. The statutes set forth certain specific deductions. (Insurance Law, § 671, subd 2.) The 20% deduction from lost earnings is intended to reflect the Social Security and income tax savings enjoyed by the receipt of tax-exempt insurance awards. (See 1973 Report of Joint Legis Committee on Insurance Rates, Regulation and Recodification of Insurance Law, No. 18, p 10.) The deductions *710 for Social Security, workers’ compensation, and medical benefits are intended to prevent a double recovery.
The deductions contained within the Insurance Law reduce the award payable to a claim to his actual economic loss. They do not (or at least are not intended to) reduce his payment below his actual economic loss. Section 65.6 (n) (2) (vi) of title 11 is a valid deduction if it reduces the payment to actual economic loss. If it reduces the payment below actual economic loss, it would be invalid as violative of the purpose and terms of the act.
This court finds that the language of section 671 of the Insurance Law ("loss of earnings from work which the injured person would have performed had he not been injured”) must be read in the context of receiving the full extent of all benefits to which accident victims are entitled. (Insurance Law, § 671, subd 1, par [b].) Under the common-law tort system, the defendant could have proved the full value of his lost earnings. (See 7A Warren, New York Negligence, ch 9, §§ 5.01, 5.02; Fuchsberg, 11 Encyclopedia NY Law, Damages, § 1042.) Although the amount of the defendant’s recovery for lost earnings is a jury question, the defendant almost certainly would have recovered the full value of his lost earnings, undiminished by the elimination of his job, during his period of disability. (Welty v Brown, 57 AD2d 1000.) In the Welty case, the plaintiff was injured in a motor vehicle accident and was disabled for a period of time. Sometime during his period of disability, his job was eliminated. Nevertheless, he was allowed to recover the amount that he would have earned during his period of disability had his job continued.
The defendant finds himself in a position similar to the plaintiff in the Welty case. Persons in this position have traditionally been allowed to recover lost earnings for their period of disability, despite the elimination of their job. The position of the Superintendent of Insurance obviously is that one must assume that claimant could not have obtained similar employment even if he had not been disabled. Based on this assumption, he concludes that the claimant’s actual economic loss is the amount of the unemployment benefits that the claimant would have received had he not been disabled. The superintendent promulgated 11 NYCRR 65.6 (n) (2) (vi) to effectuate his conclusion.
This conclusion would be reasonable if the assumption were correct. The assumption, however, is speculative and in dero *711 gation of common-law methods of determining lost earnings. Had the defendant not been injured, he might well have been able to secure work at least equivalent in pay to his former employment. Of course, this is also speculation, as his injury rendered him unable to work. To penalize him, as the superintendent’s regulation does, however, goes against the terms, the spirit, and the purpose of the act. The Superintendent of Insurance may not engage in speculation to reduce the claimant’s actual economic loss. To the extent that speculation is necessary, it should be in favor of the claimant. "The statute should be employed as a sword to gain immediate benefits for the injured, not as a shield to minimize an insurer’s potential damages.” (Yanis v Texaco, Inc., 85 Misc 2d 94, 97.) Section 65.6 (n) (2) (vi) of title 11 is invalid as applied to the defendant.
Summary judgment for defendant. No costs.

. Plaintiff asserts that defendant would have been entitled to $91 per week unemployment benefits. Defendant offers proof that the figure is actually $95 per week. In view of the decision, this factual dispute is without significance.

. The court notes that disputes over the insurer’s liability to pay first-party benefits may be submitted to arbitration. (Insurance Law, § 675, subd 2.) Arbitration is optional at the election of the claimant. (Matter of Nassau Ins. Co. v McMorris, 41 NY2d 701.) During oral argument, the attorney for the defendant-claimant waived arbitration. This action is therefore properly before the court.