Bruce GRIEBEL, Appellant-Respondent,

v.

TRI–STATE INSURANCE COMPANY OF MINNESOTA, Defendant and Third Party Plaintiff, Appellant-Respondent,

v.

EMPLOYER MUTUAL COMPANIES OF DES MOINES, Third Party Defendant, Respondent.

Nos. 51424 to 51426.

Supreme Court of Minnesota.

July 31, 1981.

Rehearing Denied Oct. 22, 1981.

Somsen, Dempsey & Schade, New Ulm, for appellant Griebel in No. 51426.

Blaufuss & Stoneberg, Marshall, for appellant Tri-State Ins. Co. in Nos. 51424 and 51425.

Gislason, Dosland, Hunter & Malecki, New Ulm, for respondent Employer Mut. Co.

SHERAN, Chief Justice.

This case arises out of two motor vehicle accidents. On January 27, 1977, appellant Bruce Griebel sustained a back injury as a result of an accident that occurred while he was driving a truck for Tri-State Grease and Tallow Co. Due to his injury, Griebel has not worked since April 18, 1977. During the period of his unemployment, Griebel received workers' compensation benefits for temporary total disability from respondent Employer Mutual Companies of Des Moines. These payments continued until May 14, 1979, at which time Griebel sustained a serious fracture of the left leg in an automobile accident that occurred while he was en route to pick up his wife from work. The second accident caused no aggravation to Griebel's back injury. Shortly after the second accident, Employer Mutual submitted its notice to discontinue benefits. In a separate order, we have summarily affirmed the decision of the Workers' Compensation Court of Appeals that requires Employer Mutual to continue the payment of benefits due to Griebel's continuing back disability.

On July 25, 1979, Griebel brought suit against his no-fault insurer, appellant Tri-State Company of Minnesota, for income loss benefits alleged to be payable because of the second accident. Tri-State served a third-party complaint upon respondent Employer Mutual, claiming a right of setoff should it be found liable for payment of no-fault benefits. In his order and amended order granting Griebel's motion for summary judgment, District Judge Noah S. Ro-

senbloom held that workers' compensation benefits are primary to the extent that both no-fault and workers' compensation benefits are payable; that Tri-State is liable for 85% of Griebel's average weekly wage at the time of his 1977 injury; and that Tri-State is entitled to an offset from Employer Mutual for the amount of workers' compensation benefits paid to Griebel. Tri-State appeals from both the original and amended orders (51424 and 51425), and Griebel appeals from the original order and judgment (51426). We affirm.

The parties ask this court to resolve the question of whether Griebel is entitled to income loss benefits under the Minnesota No-Fault Automobile Insurance Act and, if so, whether the no-fault carrier may coordinate its payments with the workers' compensation benefits Griebel receives for his first injury. These issues pose a unique dilemma that has not been directly faced by any jurisdiction that has enacted a no-fault statute. Under the no-fault act, basic economic loss benefits are payable to an insured who is injured in an automobile accident. One element of basic economic loss under the statute is income loss. Section 65B.44, subd. 3 states: "Disability and income loss benefits shall reimburse 85 percent of the injured person's loss of present and future gross income from inability to work proximately caused by the nonfatal injury subject to a maximum of $200 per week." Minn.Stat. § 65B.44, subd. 3 (1978).[1] In prior cases, this court has considered situations in which a single injury gives rise to both a no-fault claim and a claim under another type of insurance. See, e. g., *Wallace v. Tri-State Insurance Co.*, 302 N.W.2d 337 (Minn.1980) (health insurance); *Record v. Metropolitan Transit Commission*, 284 N.W.2d 542 (Minn.1979) (workers' compensation). The issue in this case, however, is whether a person already receiving temporary total disability benefits may also collect no-fault income loss benefits due to a second accident that produces an injury unrelated to the first injury, causing an independent total disability. Appellate Tri-State argues that subd. 3 of section 65B.44 does not apply to a person who is not both working and collecting wages at the time of the accident. Griebel contends that workers' compensation benefits are income and that he need not be working at the time of injury as long as he is prevented from working by the injury.

The issues raised in this case were not directly addressed by the legislature in the no-fault statute. We are convinced, however, that the statute does afford a remedy to appellant Griebel. It is clear from the record of Griebel's injuries that both injuries independently caused a disability that created an "inability to work" and prevented the earning of income. Minn.Stat. §§ 65B.43, subds. 6–7, .44, subd. 3 (1978). The fact that the periods of disability are concurrent renders more difficult a decision as to the appropriate apportionment of income loss between the two injuries.

Any apportionment of income loss must be made in light of the purposes of the no-fault and workers' compensation acts. Both no-fault and workers' compensation legislation are designed to replace wage loss resulting from a compensable injury. It is the express purpose of the no-fault act to "provide prompt payment of specified basic economic loss benefits" and to "relieve the severe economic distress of uncompensated victims of automobile accidents." Minn. Stat. § 65B.42(1) (1980). Similarly, this court has viewed the workers' compensation statute to be "a highly remedial statute [that] should not be construed so as to deny benefits unless it clearly appears that the [injury] * * * does not come within the protection of the act." *Epp v. Midwestern Machinery Co.*, 296 Minn. 231, 233, 208 N.W.2d 87, 88 (1973).[2] In keeping with this

---

1. The 1980 edition of the Minnesota statutes, the current code, is cited in this opinion where the cited section has not been amended since publication of the 1978 code, the source of the law applicable to this case.

2. Recently, the legislature expressly indicated "that chapter 176 be interpreted so as to assure the quick and efficient delivery of indemnity

broad legislative expression of policy, Griebel should not be forced to sacrifice a benefit for which he has paid premiums merely because of the intervening first injury.

The legislature has also recognized a factor that limits the amount of benefits under the no-fault act. Because both no-fault and workers' compensation benefits might be payable in some instances, the legislature has stated that an additional purpose of the no-fault act is to "provide offsets to avoid duplicate recovery." Minn.Stat. § 65B.42(5) (1980); *see Haugen v. Town of Waltham*, 292 N.W.2d 737, 740 (Minn.1980). As a part of this scheme, the payment of workers' compensation benefits is primary. Minn. Stat. §§ 65B.54, subd. 3, .61, subds. 1–2 (1978). Thus, when a claimant receives benefits under no-fault and workers' compensation, the legislature has indicated that the no-fault benefits must be reduced by the amount of workers' compensation benefits paid.

While the general legislative intent is clear, the statute does not provide a method by which an apportionment between these two compensable injuries may occur. Therefore, we must look to our case law for guidance in resolving this problem. In determining the appropriate apportionment of benefits, our recent decision in *Record v. Metropolitan Transit Commission*, 284 N.W.2d 542 (Minn.1979), is instructive. *Record* involved a single injury that resulted in both no-fault and workers' compensation coverage. We held that full income loss benefits under no-fault are payable and that workers' compensation payments, computed using the injured person's gross weekly wage, provide an offset to the amount of no-fault benefits that are owing. Accordingly, as in *Record*, we hold that Griebel is entitled to receive from his no-fault carrier income loss benefits, plus interest, equalling 85% of his average weekly wage (.85 × $193.05 = $164.09) less the amount of workers' compensation benefits paid.

and medical benefits to injured workers at a reasonable cost to the employers." Act of June

We bring this matter to the attention of the legislature so it may take action should it determine that different treatment of cases arising under similar facts is appropriate.

Judgment should be entered below in accordance with the views expressed in this opinion.

Affirmed.

1, 1981, ch. 346, § 52, 1981 Minn.Sess. Law Serv. —— (West).