Naemi DEMNING, Appellant,

v.

**GRAIN DEALERS MUTUAL INSURANCE, Respondent.**

No. C9–87–358.

Court of Appeals of Minnesota.

Sept. 8, 1987.

Thomas A. Klint, Babcock, Locher, Neilson & Mannella, Anoka, for appellant.

Robert E. Salmon, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for respondent.

Considered and decided by FOLEY, P.J., and PARKER and SEDGWICK, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Appellant Naemi Demning filed suit against her insurer, respondent Grain Dealers Mutual Insurance, seeking no-fault economic loss benefits for injuries she suffered in an automobile accident. The trial court ruled that she was entitled to the benefits, but that they were offset by social security disability benefits she had been receiving. We affirm in part, reverse in part, and modify.

## FACTS

Naemi Demning held various full-time jobs for most of the period from 1953 to 1976. In the fall of 1976, however, she was diagnosed as having multiple sclerosis and

was forced to quit working. At that time, she was employed as a produce wrapper, earning $4.77 hourly. After the diagnosis, Demning began receiving social security disability benefits, which amounted to $358 per month by December 1980. In late 1979 Demning's multiple sclerosis symptoms subsided, and in April 1980 she began working about 23 hours per week as a drug store cashier, earning $3.10 hourly. In August 1980 she quit that job and has not worked since.

On December 5, 1980, Demning was a passenger in a car that was rear-ended at a stop light. As a result of the accident, her back and neck were injured and she eventually underwent back surgery. Demning's movement is still severely restricted; for example, she can sit for only 20 minutes at a time, or stand for 15 minutes, and can walk only about one and a half blocks. After the accident, her physician advised her not to work due to her injuries.

In July 1983 Demning's physician examined her again and determined that she had recovered sufficiently to return to work. In December 1983 he advised her to do so, but after unsuccessfully attempting to increase her activity, Demning decided that she could not work and did not seek employment.

In 1984 Demning submitted a claim to her insurer, Grain Dealers Mutual, for economic loss benefits. When the insurer refused payment, she brought this action. At trial Demning claimed she had planned on returning to work in the spring of 1981, but had been unable to do so because of the car accident. The insurer argued that Demning was unemployed due to her multiple sclerosis, not the car accident. In the alternative, the insurer argued that Demning's economic loss benefits should be offset by the social security benefits she was receiving.

To show that Demning's multiple sclerosis would have prevented her from working, the insurer pointed out that Demning had quit her last job four months before the auto accident occurred. When asked why she had quit that job after only four months, Demning testified:

I understood that if you were employed nine months you automatically lose your benefits. So we decided that I'd work part of 1980 and I didn't feel at that time that I could work full-time, so I decided to quit my job and resume it in 1981, and at that time, I was hoping I could go full-time and get off social security.

Demning further testified that she could have handled a full-time job in the spring if not for the accident, because she had no trouble working eight hours per day at the drug store.

The manager at the drug store where Demning had worked testified that his notes indicated Demning had left the store for health reasons. Although he had not held a job open for her after she left, he testified that Demning had been an excellent employee and that he would have rehired her if he had a future opening. He further testified that his store had an opening approximately every six months.

The trial court concluded that Demning was unable to work from the date of the accident until December 1983 as a direct and proximate result of the injuries she suffered in the car accident and was therefore entitled to economic loss benefits of $306.59 per month (23 hours at $3.10 per hour $\times$ 4.3 weeks/month). However, the court ruled those benefits were completely offset by her $358 monthly social security disability benefits and therefore entered judgment for the insurer. Demning's posttrial motions were denied, and she appeals. The insurer has also filed a notice of review, arguing that the trial court erred in ruling that Demning was entitled to the economic loss benefits as a threshold matter.

## ISSUES

1. Was Demning entitled to economic loss benefits?

2. If so, were such benefits offset by her receipt of social security disability benefits?

## DISCUSSION

### I

Minn. Stat. § 65B.44, subd. 3 (1980), provides that

[d]isability and income loss benefits shall provide compensation for 85% of the injured person's loss of present and future gross income and inability to work proximately caused by the non-fatal injury subject to a maximum of $200.00 per week.

By ruling that Demning was entitled to these benefits, the trial court implicitly found that Demning would have been able to resume work if not for the accident, despite her pre-existing medical problems.

[I]f the injured person can demonstrate that at an appropriate period of time, employment would have been obtained but for the injury, disability income loss benefits should be payable. * * * [Economic loss benefits] should be payable if the injured person can prove he had an offer of employment that would have been accepted but for the injury * * *.

M. Steenson, *Minnesota No-Fault Automobile Insurance* at 53–54 (1982) (footnotes omitted). *See also Kennedy v. Auto Owners Insurance Company*, 87 Mich. App. 93, 273 N.W.2d 599, 601 (1979) (claimant entitled to economic loss benefits under Michigan's "temporarily unemployed" provision when he showed that he "would have been employed part-time but for the injuries" and that he suffered a loss of income as a result of that injury).

▄▄▄ Whether Demning would have returned to work if not for the car accident presents a factual issue.[1] The trial court, in its conclusions of law, found that "as a direct and proximate cause of her injuries received on December 5, 1980, Plaintiff was not able to return to work until December, 1983; and that as a result Plaintiff incurred a loss of future wages [of] $306.59 per month." In its memorandum of law, the court found "there was sufficient evidence to show that Plaintiff intended to return to some type of work in early 1981," but that she was "forestalled from seeking employment because of injuries received in the December 1980 accident." Although the trial court did not include these determinations in its findings, facts stated in a memorandum that are made a part of the court's decision, and which are consistent with the facts specifically found, become a part of the findings. *Sime v. Jensen*, 213 Minn. 476, 7 N.W.2d 325 (1942); *see* Minn. R.Civ.P. 52.01.

Demning testified that she planned to return to work in the spring of 1981. The store manager testified that if there were an opening at that time, he would have rehired her and that the turnover rate for clerks is quite high and he has periodic openings. Viewed in the light most favorable to Demning (as the prevailing party below on this issue), this evidence reasonably supports the trial court's determination that she would have been able to return to work but for the automobile accident. Therefore, the trial court's ruling will not be set aside. *See Peterson v. Johnston*, 254 N.W.2d 360, 362 (Minn. 1977). This court is obliged to accept findings that are based primarily on the relative credibility of the parties and witnesses whose testimonial demeanor the trial judge was able to observe and evaluate. *Donaldson v. Kohner*, 264 Minn. 230, 233, 118 N.W.2d 446, 448 (1962); *see also In re Estate of Balafas*, 293 Minn. 94, 198 N.W.2d 260 (1972) (reviewing court must give due regard to trial court's opportunity to judge witness credibility). The trial court's determination of Demning's entitlement to economic loss benefits from the date of the accident to December 1983 must be modified to comport with the testimony of her physician that she had recovered sufficiently to return to work in July 1983.

## II

Having determined that Demning was eligible for economic loss benefits, we must

---

**1.** The insurer cites two decisions in support of its assertion that this issue presents a question of law that is reviewable on a de novo basis. Neither case, however, has anything to do with eligibility for economic loss benefits. *Jadwin v. Minneapolis Star and Tribune Co.*, 367 N.W.2d 476 (Minn.1985), was a libel action in which the issues were whether the plaintiff was a public figure and whether the defendant newspaper had displayed actual malice. The other case cited, *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349 (Minn.1977), was a breach of warranty case arising out of the sale of an automobile.

next determine whether those benefits were properly offset by her social security benefits, as the trial court ruled. Because this issue presents a question of law, we need not defer to the trial court's determination. *Van de Loo v. Van de Loo,* 346 N.W.2d 173, 175 (Minn.Ct.App.1984).

Minn.Stat. § 65B.61, subd. 1 (1980), provides that "[b]asic economic loss benefits shall be primary with respect to benefits, except for those paid or payable under a workers' compensation law * * *." *See* Steenson, *supra,* at 72 ("Only if the injured person is covered by worker's compensation or medicare benefits may there be an offset from economic loss benefits"). This explicit exception came into play in *Griebel v. Tri-State Insurance Co.,* 311 N.W.2d 156 (Minn.1981), in which the supreme court determined that "when a claimant receives benefits under no-fault and workers' compensation, the legislature has indicated that the no-fault benefits must be reduced by the amount of workers' compensation benefits paid." *Id.* at 159.

■ Although worker's compensation benefits may be offset by economic loss benefits under section 65B.61, subd. 1, there is no similar provision for social security disability benefits. Minn. Stat. § 645.19 (1980) dictates that exceptions in a statute are to be construed to exclude all other exceptions. Therefore, we hold that economic loss benefits are not to be offset by social security disability benefits.

Our holding is consistent with previous cases involving the coordination of benefits under multiple insurance policies. In *Wallace v. Tri-State Insurance Co.,* 302 N.W.2d 337 (Minn.1980), the supreme court held that an insurer had no right to coordinate its own obligations with amounts paid by another insurer:

> If the legislature had intended to allow [the insurer] to defer its payment of benefits because of the existence of health insurance covering the same losses, it

would have written such an exception into § 65B.61, subd. 1.

*Id.* at 339.[2] *See also Hoeschen v. Mutual Service Casualty Insurance Co.,* 359 N.W.2d 677, 680 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. March 6, 1985) ("the no-fault insurers may not coordinate benefits with those paid by the army, nor may they offset their own obligation with the amounts paid by the army").

## DECISION

The trial court did not err in determining that Demning was entitled to economic loss benefits, but her entitlement is modified from December 5, 1983, to July 1983. The trial court erred in ruling that such benefits should be offset by her social security security benefits.

Affirmed in part, reversed in part, and modified.

---

**2.** In its brief, the insurer mischaracterizes the holding of *Wallace.* It claims that the court held that the insurer, as a legal entity, *could* coordinate benefits under section 65B.61, subd. 3. As discussed above, the court actually held

the opposite: "Tri-State, as a reparation obligor, has *no* right to coordinate its benefits with Federated's. This is clear from the language of Minn. Stat. § 65B.61, subd. 3 (1978)." *Id.* (emphasis added).