Roger KROH, Plaintiff and Appellant,

v.

**AMERICAN FAMILY INSURANCE,**
**Defendant and Appellee.**

Civ. No. 910417.

Supreme Court of North Dakota.

June 1, 1992.

Steven L. Latham of Wheeler Wolf, Bismarck, for plaintiff and appellant.

Thomas O. Smith of Zuger, Kirmis, Bolinske & Smith, Bismarck, for defendant and appellee.

LEVINE, Justice.

We consider whether NDCC § 26.1–41–13(1) authorizes a no-fault insurer to deduct from its payment of no-fault benefits, an insured's workers' compensation benefits which have been reduced under NDCC § 65–05–15 because the insured's injury in the nonwork-related motor vehicle accident "aggravated" a prior work-compensable injury. We hold that it does not and, accordingly, reverse and remand.

NDCC § 26.1–41–13(1) allows a no-fault insurer to reduce its payment of basic no-fault benefits under certain circumstances:

"A basic no-fault insurer has the primary obligation to make payment for economic loss because of accidental bodily injury arising out of the operation of a motor vehicle; provided, that the amount of all benefits a claimant recovered or is entitled to recover for the same elements of loss under any workers' compensation law must be subtracted from the basic no-fault benefits otherwise payable for the injury."

NDCC § 65–05–15(3) provides for the apportionment of benefits for aggravation of an injury and subsection (4) reduces workers' compensation benefits by fifty percent in cases where there is unquantifiable aggravation of a compensable injury by a nonemployment injury:

"3. In case of aggravation of a prior compensable injury by a nonemployment injury, the aggravation statute may be invoked where the nonemployment injury acts upon the prior compensable injury, and substantially contributes to the severity, acceleration, or progression of the final result, or, if it acts as a trigger to produce recurrent symptoms, and the trigger is itself a substantial aggravating or accelerating factor. All benefits may be apportioned when the aggravation statute is invoked under this subsection. The aggravation statute may not be invoked if the result is but a natural progression of the compensable injury.

"4. The bureau shall determine the aggravation award based upon all evidence, as reasonably establishes the proportion or percentage of cause as is reasonably attributable to the compensable injury. If the degree of aggravation cannot be determined, the percentage award must be fifty percent of the total benefits recoverable if one hundred percent of the injury has been the result of employment."

On September 1, 1989, Roger Kroh injured his back while working. At the time of his injury, Kroh earned approximately $400.00 per week. The Bureau accepted his claim and paid medical expenses as well as $267.00 a week for disability. On October 30, 1989, Kroh again injured his back, this time in a nonwork-related motor vehicle accident. American Family, Kroh's no-fault insurance carrier, began paying him $150.00 weekly in basic no-fault benefits, the maximum statutory amount. The Bureau, unable to quantify the percentage of Kroh's back injury caused by the prior work-related accident and the subsequent auto accident, applied NDCC § 65–05–15(4), apportioning fifty percent of the injury to each accident and reducing Kroh's workers' compensation disability benefits by fifty percent, to $133.00 a week. American Family, concluding that it could have offset Kroh's workers' compensation benefits against his basic no-fault benefits, which it had not done, refused to pay further basic no-fault benefits.

Kroh sued American Family for breach of contract. Both sides moved for summary judgment. The district court granted summary judgment in favor of American Family. This appeal followed.

Kroh argues that NDCC § 26.1–41–13(1) does not authorize American Family to offset his workers' compensation benefits against his basic no-fault benefits because of the Bureau's inability to determine the degree of aggravation under NDCC § 65–05–15(4), and its consequent fifty percent reduction of his workers' compensation benefits. We agree.

■ American Family contends that NDCC § 26.1–41–13(1) clearly and unambiguously authorizes the offset it espouses. A statute is ambiguous when it is subject to different, but rational, meanings. *Kallhoff v. Workers' Comp. Bureau*, 484 N.W.2d 510 (N.D.1992). American Family argues that "the injury" for which NDCC § 26.1–41–13(1) requires offset, is the initial work-related injury which was aggravated by the later nonwork-related auto accident. According to American Family, there is only one "injury" and consequently, any workers' compensation benefits Kroh still receives for his one "injury" must be subtracted from any "basic no-fault benefits otherwise payable for the injury." NDCC § 26.1–41–13(1), when read literally and in isolation, may ordain the result advocated by American Family.

However, statutes that are clear and unambiguous when read separately may contain a latent ambiguity when read together and applied to a particular set of facts. *State ex rel. Moug v. N.D. Auto., Etc.*, 322 N.W.2d 245 (N.D.1982). And we must construe together all statutes relating to the same subject matter and give full force and effect to the legislative intent. *See e.g., Cass County Electric Co-op v. N.S.P.*, 419 N.W.2d 181 (N.D.1988). Kroh maintains that NDCC § 26.1–41–13(1) and NDCC § 65–05–15(3), read together, create a distinction between two kinds of injuries. NDCC § 65–05–15(3) expressly differentiates between "injuries" when it says "[i]n case of aggravation of a *prior compensable injury* by a *nonemployment injury*, the aggravation statute may be invoked where the *nonemployment injury* acts upon the *prior compensable injury.*" (Emphasis added.) That explicit distinction is implied in NDCC § 26.1–41–13(1), Kroh maintains. So, he has suffered two distinct injuries, his "work-compensable injury" and his injury sustained in the auto accident, a "nonemployment injury," that aggravated his "work-compensable injury." Because NDCC § 26.1–41–13(1) requires the payment of no-fault benefits only for an injury sustained from an auto accident, Kroh argues that the offset of workers' compensation benefits is available only if the injury for which workers' compensation benefits are paid, is one arising from an auto accident. Kroh says that, because he is entitled to basic no-fault benefits only for his "accidental bodily injury" arising from his nonwork-related automobile accident not covered by workers' compensation, no workers' compensation benefits for his other injury may be offset.

We conclude that either interpretation is reasonable, and, therefore, the statutes, when read together, are ambiguous. When interpreting ambiguous statutes, this court may consider pertinent extrinsic evidence. *State ex rel. Moug*, 322 N.W.2d at 247. That evidence may include legislative history, the object of the statute and the consequences of a particular construction. NDCC § 1–02–39; *Kallhoff*, 484 N.W.2d at

512; *St. Alexius Hospital v. Eckert*, 284 N.W.2d 441 (N.D.1979).

Our review of the legislative history tells us that NDCC § 26.1–41–13(1) has remained unchanged since its original enactment in 1975. 1975 N.D.Sess.Laws, ch. 265 § 10. NDCC § 65–05–15 is a much older statute. It was first enacted in 1913 and, until 1931, applied when a work-related injury from one employment was aggravated by a work-related injury in a second employment. 1925 Supp.Comp.Laws, § 396a7; 1931 N.D.Sess.Laws, ch. 312 § 1. From 1931 until 1981, NDCC § 65–05–15 applied only when a work-related injury aggravated a prior nonwork-related injury. Then, in 1981, NDCC § 65–05–15 was amended to also reduce benefits in the situation in which a nonwork-related injury aggravated a prior work-related injury. 1981 N.D.Sess.Laws, ch. 643 § 5. So, until 1981, the issue in this case would not have arisen. There would have been no reduction of workers' compensation benefits under NDCC § 65–05–15 because that statute would not have applied to aggravation of a work injury by a nonwork injury. It seems clear, therefore, that until 1981, the legislature evidenced no interest to offset against no-fault benefits workers' compensation benefits that were subject to the aggravation statute.

The legislative history of NDCC § 65–05–15 contains but one reference to the 1981 amendment. Mr. Thompson, the drafter of the amendment, prepared a statement for the Legislative Committee, explaining:

"Presently, the 'aggravation statute' refers specifically to conditions which preexist an employment injury. But it often happens that an individual will suffer an employment injury, return to work, and, at some later time, have a non-employment injury which aggravates the prior employment injury and may, in fact, be much more severe than the employment injury. The Bureau feels that that specific situation should be addressed in the aggravation statute as well. Therefore, the appropriate language has been inserted." 1981 Senate Industry, Business and Labor Committee

Minutes, Drafter's Notes, S.B. 2127 (March 2, 1981).

Unfortunately, neither Mr. Thompson nor anyone else explained the intended effect of the 1981 amendment upon the offset of workers' compensation benefits under NDCC § 26.1–41–13(1). But Mr. Thompson's comments confirmed the obvious purpose of the 1981 amendment to NDCC § 65–05–15(3)—to bar payment of workers' compensation benefits for whatever aggravation that a "nonemployment injury" causes to a prior "work-compensable injury." Providing benefits only for work-related injury and not for aggravation to work-related injury by nonemployment injury is in accord with the purpose of the Workers' Compensation Act, "providing sure and certain relief for workers *injured in their employment." See Holmgren v. Workers' Comp. Bureau,* 455 N.W.2d 200, 202 (N.D.1990). However, nowhere does the legislative history indicate that the amendment to NDCC § 65–05–15 was intended to limit a claimant's right to compensation from other sources than the Bureau for the subsequent "nonemployment injury."

We derive direction from the respective purposes of each statute. *See, e.g., Van Klootwyk v. Arman,* 477 N.W.2d 590 (N.D.1991). The primary purpose of the Auto Accident Reparations Act is to "provide adequate compensation for victims of motor vehicle accidents." *Van Klootwyk,* 477 N.W.2d at 593. The purpose of an offset provision is to prevent double recovery or overlapping of benefits. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Brooks,* 101 Misc.2d 704, 421 N.Y.S.2d 1010 (1979); *Griebel v. Tri–State Insurance Co. of Minnesota,* 311 N.W.2d 156 (Minn.1981). NDCC § 26.1–41–13(1) shares that purpose. The Workers' Compensation Act compensates injuries in the course of employment. The Auto Accident Reparations Act compensates injuries arising out of the operation of a motor vehicle.

While the purpose of each statutory scheme is to compensate injured victims, each compensates a distinct kind of injury, one, a work-related injury, the other, an auto-related injury. Consequently, duplication or overlapping of workers' compensation and no-fault benefits occurs only when an injury is the result of an auto accident occurring in the course of employment. *Cf. Weber v. State Farm Mut. Auto. Ins. Co.,* 284 N.W.2d 299 (N.D.1979) [obvious reason for excluding from no-fault coverage persons servicing or repairing a vehicle when in the course of business is that such persons would be protected by workers' compensation laws].

Here, we do not have a coincidental work-related auto accident and so there is no duplication or overlapping of workers' compensation benefits and basic no-fault benefits. The Bureau applied NDCC § 65–05–15(4) and, as a result, one-half of Kroh's back condition was apportioned to his work accident and one-half to his later nonwork-related auto accident. In essence, by operation of law, Kroh's back condition was divided into two distinct "injuries," the initial "work-compensable injury" and the later "nonemployment injury."

But, because NDCC § 26.1–41–13(1) does not differentiate between "work-compensable injury" and "nonemployment injury," American Family insists that all workers' compensation benefits must be subtracted from basic no-fault benefits. This argument ignores the import of the language that requires a basic no-fault insurer to pay benefits only for "accidental bodily injury arising out of the operation of a motor vehicle."[1] "Injury," in the context of NDCC § 26.1–41–13(1), means an injury arising out of an auto accident, the only kind of injury for which no-fault benefits must be paid. If that injury is also work-related, the offset provision is triggered to avoid duplication of benefits for the same injury.

1. NDCC § 26.1–41–01(1) says:
"'Accidental bodily injury' means bodily injury, sickness, or disease, including death resulting therefrom, arising out of the operation of a motor vehicle, and which is accidental as to the person claiming basic or optional excess no-fault benefits."

Because we read statutes as a whole, *County of Stutsman v. State Historical Soc.*, 371 N.W.2d 321 (N.D.1985), and construe statutory language in its context, *Van Klootwyk v. Arman*, 477 N.W.2d at 592, we conclude that the words, "the injury," relate back to the first part of NDCC § 26.1–41–13(1) and refer only to an accidental bodily injury arising out of the work-related operation of a motor vehicle. Therefore, under NDCC § 26.1.41–13(1), American Family may subtract workers' compensation benefits payable for an injury sustained as a result of a work-related motor vehicle accident. It may not deduct benefits payable for a work-compensable injury not involving the operation of a motor vehicle.

■ By reducing Kroh's workers' compensation benefits by fifty percent, the Bureau ensured that it paid benefits only for his work injury and not for his nonemployment injury. Consequently, Kroh received no workers' compensation benefits for his nonemployment injury which overlap with or duplicate basic no-fault insurance benefits. It follows that there are no workers' compensation benefits to be deducted from Kroh's basic no-fault benefits. He is entitled, therefore, to receive all of the basic no-fault benefits due for his nonemployment injury sustained as a result of his nonwork-related auto accident.

We believe our conclusion fully effectuates the purpose behind each statute. We deem significant the legislature's failure to expressly direct an offset in cases where the aggravation statute has been applied. The legislature knows how to direct an offset for reduced workers' compensation benefits when it intends such an offset to be effectuated. It recently enacted two workers' compensation statutes to offset social security disability and retirement benefits against workers' compensation disability benefits. Each statute explicitly requires that if a workers' compensation claim "has been accepted on an aggravation basis and the [claimant] is eligible for social security benefits, the bureau's offset must be proportionately calculated." NDCC § 65–05–09.1(2); NDCC § 65–05–.

09.2. As Sutherland explains: "[W]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed." 2B *Sutherland Stat. Const.* § 51.02 (5th ed. 1992). We conclude that the legislature's failure to express its intention to offset workers' compensation benefits reduced by application of the aggravation statute, shows its intent that there be no such offset.

American Family relies on *Griebel v. Tri–State Insurance Co. of Minnesota*, 311 N.W.2d 156 (Minn.1981). In *Griebel*, a worker sustained a back injury in the course of employment, followed by a nonwork-related auto accident which resulted in a leg injury. *Id.* The Minnesota Supreme Court concluded that to avoid duplicate recovery, no-fault benefits must be reduced by the amount of workers' compensation benefits paid. *Id.* at 159. However, *Griebel* is legally and factually distinguishable and, therefore, not persuasive. There is no aggravation statute in Minnesota. Nor does *Griebel* involve the aggravation of one injury by another or a reduction of workers' compensation benefits as a result of a subsequent nonwork-related automobile accident. *Id.*

Construing the words "the injury" in the manner suggested by American Family would allow a no-fault insurer to offset all workers' compensation benefits paid, even those not arising out of the operation of a motor vehicle. Under American Family's proposed construction, a person receiving workers' compensation benefits for a work-related injury who is involved in a subsequent nonwork-related accident which may double the severity of the original injury, is to receive only half the compensation received before, with no remedy to recover compensation for the auto accident. We construe statutes to avoid an absurd result. *Olmstead v. Miller*, 383 N.W.2d 817 (N.D. 1986).

Reading NDCC § 65–05–15 and NDCC § 26.1–41–13(1) together and in light of their respective purposes, we conclude that

American Family cannot offset workers' compensation benefits after the Bureau has applied NDCC § 65–05–15(4) and has reduced Kroh's benefits by fifty percent as a result of his injury sustained in his later nonwork-related motor vehicle accident.

Accordingly, we reverse the summary judgment for American Family and remand to the district court for determination of the benefits to which Kroh is entitled under his no-fault insurance policy.

ERICKSTAD, C.J., and MESCHKE, JOHNSON and VANDE WALLE, JJ., concur.