489 A.2d 918

**John E. VARNER**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 20, 1984.

Filed March 8, 1985.

Harvey Freedenberg, Harrisburg, for appellant.

Neil J. Rovner, Harrisburg, for appellee.

Before WICKERSHAM, WIEAND and HESTER, JJ.

HESTER, Judge:

Appellee, John E. Varner, was severely injured in an automobile accident on October 10, 1981. His no-fault

motor vehicle insurance carrier was appellant, Nationwide Mutual Insurance Company.

Appellee's principal injuries were a fractured skull and fractured left shoulder. He was hospitalized at Geisinger Medical Center in Danville, Pennsylvania from October 10, 1981 through October 27, 1981.

While in the hospital in October 1981, appellee developed a urinary tract infection. The parties agreed that this infection was aggravated by medical maltreatment; the steroids used to reduce cerebral swelling lowered appellee's resistance to the urinary tract infection.

Appellee was hospitalized again from October 29, 1981 through December 18, 1981 and from January 19, 1982 through June 18, 1982 primarily for treatment of the urinary tract infection. The infection spread to his lower extremities causing permanent septic arthritis in his joints. These later hospital stays resulted in medical expenses of approximately $100,000.00. The results of the infection prevent appellee from returning to work as a welder.

Appellant paid $9,703.45 in medical bills for the initial period of hospitalization, but refused to pay for the two subsequent periods. Appellant refused to pay due to its belief that the subsequent treatment was the result of medical malpractice and therefore not covered by no-fault motor vehicle insurance.

Thereafter, appellee filed a complaint in assumpsit in the Dauphin County Court of Common Pleas seeking maximum work loss benefits, attorney fees, interest and payment of all medical bills. Both parties filed motions for summary judgment. By order dated September 8, 1983, appellant's motion for summary judgment was granted with respect only to appellee's claim for attorney fees; appellee's motion was granted as to all other issues. Appellant perfected this appeal from the order of September 8, 1983.

It is appellant's contention that the work loss and unpaid medical expenses were for injuries not arising "out of the

maintenance or use of a motor vehicle."[1]  Instead, it claims they resulted from negligent medical treatment.

■  Basic loss benefits are payable to "an individual who suffers injury arising out of the maintenance or use of a motor vehicle."  40 P.S. §§ 1009.201, 1009.103.  "Maintenance or use of a motor vehicle" is defined in § 1009.103 as:

maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, or alighting from it.  Maintenance or use of a motor vehicle does not include:

(A) conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles unless the conduct occurs off the business premises; or

(B) conduct in the course of loading or unloading a motor vehicle unless the conduct occurs while occupying, entering into, or alighting from it.

Our inquiry, therefore, is whether the urinary tract infection and complications developing therefrom were injuries which arose from the use of a motor vehicle.

As with any tort cause of action, there must be a causal connection between the use of the automobile and the injury suffered to receive basic loss benefits;  the injuries must be more than coincidental.  This connection in no-fault insurance cases, however, need not rise to the level of proximate cause.  *Schweitzer v. Aetna Life and Casualty Co.*, 306 Pa.Super. 300, 452 A.2d 735 (1982).

■  In drafting the Pennsylvania No-fault Motor Vehicle Insurance Act the Pennsylvania General Assembly intended to provide prompt and maximum benefits to all persons injured in motor vehicle accidents.  *Swezey v. Home Indem. Co.*, 571 F.Supp. 224 (D.C.Del, 1983).  Furthermore, if the judiciary errs in ascertaining legislative

---

**1.**  Appellant also argues that the lower court erred in failing to designate whether the expenses claimed by appellee were allowable expenses under the No-fault Act.  As this contention is meritless, it does not require further discussion.

intent when interpreting the No-fault Act, it should err in favor of the insured. *Bills v. Nationwide Mutual Insurance Co.*, 317 Pa.Super. 188, 463 A.2d 1148 (1983).

■ These general policies along with applicable case law and rules of statutory construction direct us to rule in favor of coverage for appellee. Accordingly, we affirm.

Appellant cites several Superior Court decisions which held that the particular injuries were merely coincidental to the motor vehicle accident. It would have us hold the injuries sub judice were similarly too remote to warrant no-fault coverage.

In *Schweitzer v. Aetna Life and Casualty Co., supra,* the plaintiff was operating her motor vehicle while being pursued by an intentional tort-feasor operating a motorcycle. No collision occurred; nevertheless, when the plaintiff's vehicle came to a stop, the tort-feasor opened the plaintiff's door, pulled her from the vehicle and struck her with his fists. Her injuries were not compensable under the Act because they had no causal connection with the use of the motor vehicle.

Similarly, in *Erie Insurance Exchange v. Eisenhuth*, 305 Pa.Super. 571, 451 A.2d 1024 (1982), this court denied no-fault benefits to a passenger whose driver was fleeing from a police officer. The driver refused to pay for gasoline, and the officer was in hot pursuit. When the passenger's vehicle skidded into a ditch, the officer approached it on foot. As the pursued vehicle emerged from the ditch, the officer fired his hand gun into the car, wounding the passenger. This court held that the cause of injury was a gunshot wound and not the use of a motor vehicle; even the less restrictive "but for" standard of causation was not satisfied.

Finally, in *Howe v. Harleysville Insurance Companies,* 313 Pa.Super. 65, 459 A.2d 412 (1983), the plaintiff was injured while operating his jeep. A hunter shot him, believing the jeep was a deer. In denying no-fault compensation, this court opined:

The injury sustained by appellee was caused by a bullet. The connection between the injury and the insured vehicle was nothing more than mere chance or happenstance. *Id.*, 313 Pa.Superior Ct. at 70, 459 A.2d at 414

We do not agree with appellant that the injuries sustained by appellee were as remote to the operation of his vehicle as those suffered by the claimants in *Schweitzer, Eisenhuth* and *Howe.* The claimant was beaten in *Schweitzer*, and shot in *Eisenhuth* and *Howe*; their injuries did not follow unrelated injuries sustained in the use of a motor vehicle.

On the other hand, the alleged medical malpractice here, resulting in severe infection, occurred in the treatment of the injuries sustained in a motor vehicle accident. But for the accident and injuries, appellee would not have been subjected to medical treatment, competent or otherwise. It is much more probable that an individual will be hospitalized than assaulted as a result of operating a motor vehicle.

We recognize that the interpretation of "maintenance and use of a motor vehicle" is not easily derived. Where the words of a statute are unclear, we can determine legislative intent by considering the "object to be attained," and the "consequences of a particular interpretation." 1 Pa.C.S.A. § 1921(c). In recognizing the significant effect of motor vehicle transportation on intrastate commerce, the need for "maximum feasible restoration" of all persons injured in motor vehicle accidents, and the need for a prompt, inexpensive and comprehensive system of compensating accident victims, the General Assembly hoped to provide a "Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims...." 40 P.S. § 1009.102(a) and (b). Extending no-fault benefits to accident victims whose injuries are aggravated by medical malpractice supports this policy particularly in light of the likelihood of medical treatment.

Moreover, the consequences of not extending no-fault benefits in these cases would encourage carriers to protest often and vigorously that injuries were compounded by

medical treatment. That could destroy a system designed for prompt, low-cost and "maximum possible restoration."

For the foregoing reasons, we affirm.

Order affirmed.