**TARGET STORES, A DIVISION OF DAYTON HUDSON CORPORATION, a Minnesota corporation, Plaintiff and Appellee,**

v.

**AUTOMATED MAINTENANCE SERVICES, INC., a North Dakota corporation, Defendant, Third–Party Plaintiff and Appellee,**

v.

**BEHM'S PROPANE, INC., Third–Party Defendant,**

**and**

**Pioneer/Eclipse Corporation, Third–Party Defendant and Appellant.**

**Civ. No. 920108.**

Supreme Court of North Dakota.

Nov. 24, 1992.

---

Robins, Kaplan, Miller & Ciresi, Chicago, Ill., for plaintiff and appellee Target Stores; argued by Thomas G. Mattson. Appearance by David A. Engen.

Christian A. Preus (argued), Minneapolis, Minn., for defendant, third-party plaintiff and appellee Automated Maintenance Services, Inc.

Jeffries, Olson & Flom, Moorhead, Minn., for third-party defendant and appellant Pioneer/Eclipse Corp., argued by Joel A. Flom.

MESCHKE, Justice.

To answer a certified question of law, we clarify the current status of the law of contribution between concurrent tort-feasors who have not acted in concert. Because, without concerted action, liability of each tort-feasor is now several rather than joint, we conclude that, currently, a sued tort-feasor cannot maintain a third-party claim for contribution against a tort-feasor not sued by the injured claimant.

Pursuant to NDRAppP 47, the United States District Court for the District of North Dakota, Northeastern Division, Honorable Rodney S. Webb presiding, stated the relevant facts and the nature of the controversy for the question certified:

> This is a negligence action brought by the plaintiff Target Stores [Target], against Automated Maintenance Services, Inc., [Automated] concerning a fire in the Target Store in Grand Forks, North Dakota, on April 6, 1989. Employees of Automated cleaned Target at night after the store closed. Automated used propane-powered floor buffers, manufactured by Pioneer/Eclipse Corporation [Pioneer/Eclipse] that did not operate properly when the propane tanks were overfull. Automated gave instructions to its propane suppliers to underfill the tanks.

On the night in question an Automated employee, believing the propane tanks of the buffers to be overfilled, bled propane from two tanks. The propane ignited when another Automated employee started a floor scrubber in the same area. The resulting fire caused over a half million dollars in property damage.

On August 15, 1990, Target brought suit to recover its damages. Target sued only Automated, taking the position that Automated was 100 percent at fault for causing the fire and resulting damages. On September 20, 1990, Automated brought a third party action against Pioneer/Eclipse alleging that the buffer was negligently or defectively designed and that Pioneer/Eclipse failed to adequately warn or instruct.

The deadline for amending the pleadings to allow Target to assert a direct claim against Pioneer/Eclipse has expired. Target's counsel has stated on the record that Target does not intend to make a direct claim against Pioneer/Eclipse and that no agreement, settlement, or other arrangement between Target and Pioneer/Eclipse exists. There is no allegation that Pioneer/Eclipse and Automated acted in concert, aided or encouraged each other, or ratified or adopted for their benefit, a tortious act committed by either of them.

Pioneer/Eclipse has moved for summary judgment on the negligence/products liability claim against it on the grounds that Automated's liability is several only, and therefore, Automated will never be required to pay more than its pro rata share of Target's damages.

The court believes that this question involves an interpretation of North Dakota law of some magnitude. If Pioneer/Eclipse's position is correct, it will eliminate the ability of a defendant sued on negligence/products liability theories to bring a third party action against another potential tortfeasor. It does not appear that the North Dakota Supreme Court has addressed this issue, and the

question certified may be dispositive of all or part of the action pending before this court.

In a footnote, the court added:

Automated also brought a third party action against Behm's Propane, Inc., which has been resolved by summary judgment. Automated also brought suit against Pioneer/Eclipse on a contract/indemnity theory that is not at issue for purposes of this certified question.

■ With these facts, the court certified this question of law:

In a case involving claims of products liability and negligence, governed by Chapter 32–03.2 of the North Dakota Century Code, where a plaintiff elects not to sue all potential tortfeasors, and where the non-sued potential tortfeasors did not act in concert with, aid, encourage, ratify, or adopt the act of a defendant, does Chapter 32–03.2 when read in concert with NDCC § 32–38–01(2), preclude a third party action by a defendant against a non-sued potential tortfeasor?

We answer, Yes. A non-sued tort-feasor, who did not act in concert with, nor aid or encourage a sued tort-feasor, nor ratify or adopt that tort-feasor's act, is not liable for contribution to the sued tort-feasor.

Since 1957, the right of contribution among tort-feasors has been expressed in NDCC 32–38–01. The controlling provision is subsection 2 of that section:

The right of contribution exists only in favor of a tort-feasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tort-feasor is compelled to make contribution beyond his own pro rata share of the entire liability.

From 1973 until recently, that section was supplemented by another relevant statutory directive. For damages from negligence resulting in death or injury to persons or property, "[w]hen there are two or more

persons who are jointly liable, contributions to awards must be in proportion to the percentage of negligence attributable to each; provided, however, that each shall remain jointly and severally liable for the whole award." NDCC 9–10–07. *See Bartels v. City of Williston*, 276 N.W.2d 113, 121 (N.D.1979) (Enactment of NDCC 9–10–07 in 1973 impliedly repealed conflicting subsections of NDCC 32–38–02 and 32–38–04, and impliedly substituted allocation of tort damages by percentage of fault in Ch. 32–38). If one tort-feasor paid more than his percentage share, other concurrent tort-feasors were jointly and severally liable to contribute their allocable percentage shares.

In 1987, the Legislature enacted a number of tentative tort reforms. Among these, joint liability of concurrent tort-feasors was changed to several liability, absent concerted action. 1987 ND Laws 404, § 2 and 3; NDCC 32–03.2–02 and 32–03.2–03. These tort reforms were made effective only through June 30, 1993. 1987 ND Laws 404, § 15. Thus, NDCC 9–10–07 on comparative negligence, making each tort-feasor jointly and severally liable for the whole award, was "suspended from the effective date of this Act through June 30, 1993." 1987 ND Laws 404, § 15. This suspension makes the tort reforms temporary and tentative.

The reforms relevant here directed that responsibility for tort damages be separately allocated among concurrent tort-feasors on a percentage basis, rather than jointly and severally, absent concerted action. NDCC 32–03.2–02 and 32–03.2–03. In *Kavadas v. Lorenzen*, while upholding the constitutionality of NDCC 32–03.2–02, we characterized the purpose of the reforms:

A statement of legislative intent indicates that the legislative goals of this act were to "limit, clarify, and improve the method of determining and fixing responsibility for and paying of damages" and to reduce the cost and increase the availability of liability insurance.

448 N.W.2d 219, 223 (N.D.1989). To implement these goals, the Legislature created two categories of tort-feasors: Tort-feasors who act in concert are jointly liable, and all other concurrent and successive tort-feasors are severally liable.

█ Two sections are relevant here. NDCC 32–03.2–02 governs "negligence." Target's claim against Automated is for simple negligence. NDCC 32–03.2–03 governs "product liability involving negligence." Automated's claim against Pioneer/Eclipse is for product liability involving negligence. Regardless of which section applies, the governing language is the same:

When two or more parties are found to have contributed to the injury, the liability of each party is several only, and is not joint, and each party is liable only for the amount of damages attributable to the percentage of fault of that party, except that any persons who act in concert in committing a tortious act or aid or encourage the act, or ratifies or adopts the act for their benefit, are jointly liable for all damages attributable to their combined percentage of fault.

NDCC 32–03.2–02 and 32–03.2–03 (part of each). These directives make the liability of each tort-feasor separate and several, instead of joint, unless they acted in concert in causing the injury.

The legislative history of 1987 ND Laws 404, §§ 2 and 3, does not ascribe the source of the "concerted action" categories stated in NDCC 32–03.2–02 and 32–03.2–03. Still, the language of the "concerted action" exceptions is phrased remarkably parallel to Prosser's postulation of the joint liability of tort-feasors for "concerted action" in the common law. *See* W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* § 46 at 323 (5th ed. 1984):

All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's acts done for their benefit, are equally liable.

(Footnotes omitted). [Compare that formulation with the description in Restatement (Second) of Torts § 876 (1977) ("Persons Acting in Concert") and § 877 ("Directing or Permitting Conduct of Another"), and in 74 Am.Jur.2d *Torts* § 61 (1974)]. This joint liability differs from the traditional liability that was severally imposed by the common law on other concurrent or successive tort-feasors when the harm was not considered to be single and indivisible. *See* Prosser and Keeton, § 52 at 345 on "Apportionment of Damages"; Restatement (Second) of Torts § 433A (1964). A summary of HB 1571 presented at a hearing before the Senate Committee on Judiciary on March 11, 1987 says that NDCC 32–03.2–02 and 32–03.2–03 were intended to make "[t]he liability of each party ... several, not joint, unless the parties acted in concert."

This aspect of the tort reforms seems to largely, though tentatively, change allocation of tort responsibility back to the method used at an earlier stage of North Dakota law. For instance, *Boulger v. Northern Pac. Ry.* held that

> where it appears that part of the [tort] damage was caused by a third party or a third cause, the plaintiff, unless a conspiracy or joint tort can be proved, can only recover against the defendant such damages as he can show were occasioned by the defendant['s] wrong.

41 N.D. 316, 171 N.W. 632, 634 (1918). That court explained:

> The fact that it is difficult to separate the injury done by each one from others should furnish no reason for holding that one tort-feasor should be liable for acts of others with whom he is not acting in concert.

*Id.* A half-century later, in *Thorson v. City of Minot,* 153 N.W.2d 764 (N.D.1967), this court shifted course and declined to apply *Boulger* in allocating tort damages from concurrent acts of several tort-feasors who did not act in concert.

The *Thorson* court allowed the claimants to recover all of the damages from the sued tort-feasor, treating that tort-feasor as jointly and severally liable, because each concurrent tort-feasor could recover contribution from others not sued under NDCC 32–38–01.

> That being the case, there is no longer any reason for distinguishing between cases of wrongdoers acting in concert and cases of wrongdoers acting concurrently but not in concert.

*Thorson,* 153 N.W.2d at 773. In doing so, North Dakota was following a growing national trend. *See* 74 Am.Jur.2d *Torts* § 361–64 (1974). The change embodied in NDCC 32–03.2–02 and 32–03.2–03 tentatively turns away from that trend and restores separate allocation of tort responsibility, unless there is concerted action.

To that extent, this is a return to the English common law rule. *See* 74 Am. Jur.2d *Torts* § 61. Yet, this change may not persist past 1993, when the temporary reforms are scheduled to expire, and the suspended directive in NDCC 9–10–07 would again become effective without new legislation. If that happens, each concurrent tort-feasor would then "remain jointly and severally liable for the whole award" and again be subject to contribution in proportion to that tort-feasor's percentage of negligence.

■ Pioneer/Eclipse argues that it cannot be held jointly liable to Target and cannot be required to contribute to Automated's liability because there is no claim that Pioneer/Eclipse acted in concert with Automated. We agree.

■ In its statement of relevant facts, the certifying court explained that "[t]here is no allegation that Pioneer/Eclipse and Automated acted in concert, aided or encouraged each other, or ratified or adopted for their benefit, a tortious act committed by either of them." Under current North Dakota law, the lack of concerted action by concurrent tort-feasors precludes contribution among them. When liability of a concurrent tort-feasor is statutorily directed to

be several, that directive precludes liability of the tort-feasor for more than a percentage share of the damages, and precludes a claim for contribution between concurrent tort-feasors.

Despite the court's certification that no concerted action was pleaded, Target argues that "evidence at trial will prove that Automated ratified and/or adopted for its benefit acts of Pioneer/Eclipse which Automated claims are tortious." Yet, the certifying court also explained that "[t]he deadline for amending the pleadings to allow Target to assert a direct claim against Pioneer/Eclipse has expired." Even if we assume that Automated will try to defend by shifting the blame for damages to Pioneer/Eclipse in supplying buffers "that did not operate properly when the propane tanks were overfull," we cannot understand how Target expects to benefit from that evidence when it has made no claim based on that theory.

■ Automated correctly says that, under our present comparative fault law, it is legally responsible only for that percentage share of the injury attributable to its fault. Yet, Automated argues that if it can potentially be held responsible for more than its percentage share of the damages, it should be allowed to maintain a third-party claim for contribution against Pioneer/Eclipse, and to keep Pioneer/Eclipse in the case through trial. Even though our N.D.R.Civ.P. 15(b) is the same as Fed. R.Civ.P. 15(b) on amendment of the pleadings to conform to the evidence, amendment of the pleadings is a matter for the certifying court to control under its rules of procedure, not a matter of North Dakota tort law for this court to decide. A third-party claim for contribution, like this one by Automated against Pioneer/Eclipse, is bootless when there is no pleading that the added party acted in concert with the third-party claimant.[1]

On the facts stated by the certifying court, we conclude that any liability of each party, Automated and Pioneer/Eclipse, is several, not joint, because no concerted action is claimed. Therefore, Automated cannot be liable to Target for more than its percentage share of Target's damages, and Automated cannot make a third-party claim for contribution against Pioneer/Eclipse. Under current North Dakota law, the absence of a claim for concerted action among concurrent tort-feasors precludes a third-party claim for contribution between them.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and JOHNSON, JJ., concur.

---

1. If Target were to establish at trial that Automated ratified or adopted a tortious act of Pioneer/Eclipse, it is conceivable that Automated may be held liable to Target for doing so. If so, it may be arguable whether this liability is for Automated's own acts, or for concerted action with Pioneer/Eclipse. *See,* for examples, Restatement (Second) of Torts § 876 cmt. on Clause (c), and Illus. 13 and 14. But this different question has not been certified to us. The answer would no doubt depend on facts yet to be determined.