1999 ND 94

**Tony HAFF, Plaintiff and Appellant,**

v.

**Damon HETTICH, Defendant.**

and

**Farmers Insurance Exchange, Defendant and Appellee**

No. 980229.

Supreme Court of North Dakota.

May 19, 1999.

---

384

David A. Tschider, Tschider & Smith, Bismarck, N.D., for plaintiff and appellant.

Jason R. Vendsel, McGee, Hankla, Backes & Dobrovolny, Minot, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Tony Haff appealed from a judgment ordering Farmers Insurance Exchange to pay him $19,158.74 in underinsured and basic no-fault benefits. We hold an original tortfeasor is not liable under N.D.C.C. § 32–03.2–02 for damages caused by medical malpractice in treating the original injury; N.D.C.C. § 32–03.2–02 does not violate substantive due process; and under N.D.C.C. ch. 26.1–41, bodily injury arising out of a motor vehicle accident includes negligent medical treatment of personal injuries sustained in a motor vehicle accident. We affirm in part, reverse in part, and remand with instructions.

I

[¶ 2] Haff initially sued Hettich for personal injuries incurred in a 1991 motor vehicle accident. At trial, Hettich claimed Haff's injuries were caused, in part, by negligent post-accident treatment by Haff's chiropractors, who were not named as parties in the action. Haff requested a jury instruction following *Polucha v. Landes*, 60 N.D. 159, 233 N.W. 264 (1930), which recognized an original tortfeasor was liable for aggravation of an original injury caused by the negligence of a physician reasonably selected by the injured person. The trial court decided the modified comparative fault provisions of N.D.C.C. § 32–03.2–02 effectively overruled *Polucha* and refused to give Haff's requested instruction. The court, instead, instructed the jury to apportion fault among those parties and other persons who were at fault for Haff's injuries. The court instructed the jury on the standard of care for Haff's chiropractors. The court also instructed the jury Hettich was not liable for damages proximately caused by the negligence of Haff's chiropractors, and Hettich had the burden of proving Haff's chiropractors were negligent.

[¶ 3] The jury found Hettich's negligence proximately caused serious injury to Haff and other persons' negligence also proximately caused injury to Haff. The jury apportioned forty percent of the fault to Het-

tich and sixty percent of the fault to others. The jury decided Haff incurred $161,000 in non-economic damages for past and future pain, discomfort, and mental anguish, and $29,000 in economic damages for past and future medical expenses and loss of productive time.

[¶ 4] Haff informed Farmers Insurance Group, his underinsured and no-fault carrier, of a proposed settlement under N.D.C.C. § 26.1–40–15.5(2) with Hettich and Heritage Mutual Insurance Company, Hettich's insurance carrier. Haff subsequently settled with Hettich for $50,000, the liability limit of Hettich's policy with Heritage.

[¶ 5] Farmers, Haff, and Hettich then stipulated to allow Farmers to intervene in Haff's action against Hettich to decide Farmers' liability to Haff for underinsured and no-fault benefits. Farmers, Haff, and Hettich stipulated to dismiss Hettich from the action with prejudice. The parties agreed, however, Haff would appeal the decision in *Haff v. Hettich* for a ruling on whether N.D.C.C. § 32–03.2–02 overruled *Polucha* and whether Farmers was obligated for either forty percent, or all of Haff's damages, less the amount paid by Heritage. Their stipulation provided:

> Unless otherwise ordered by the North Dakota Supreme Court or the District Court in *Haff v. Hettich*, with respect to all damage issues, Farmers and Haff agree that both and each shall be fully and finally bound by a final post appeal judgment in the *Haff v. Hettich* case. It will not be necessary for Tony Haff to relitigate liability or damage issues in a second action against Farmers, the underinsured and no-fault carrier.

[¶ 6] Haff amended his complaint to allege a claim directly against Farmers for $110,000 in underinsured benefits for his non-economic damages and $29,000 in no-fault benefits for his economic damages.[1] Farmers answered, alleging it was obligated for no-fault benefits totaling forty percent of Haff's $29,000 in economic damages and underinsured

---

1. Haff's amended complaint sought underinsured benefits for the $161,000 in non-economic damages minus the $50,000 paid by Heritage

and no-fault benefits for the entire $29,000 in economic damages.

benefits representing forty percent of Haff's $161,000 in non-economic damages, minus the $50,000 paid by Heritage. Haff and Farmers both moved for summary judgment. Haff also moved for a new trial, contending the trial court erred in failing to instruct the jury under *Polucha* and seeking a new trial solely on the issue of whether Haff utilized reasonable care in selecting his chiropractors.

[¶ 7] The trial court denied Haff's motion for summary judgment and for a new trial, ruling N.D.C.C. § 32–03.2–02 effectively overruled *Polucha*. The court granted Farmers' motion for summary judgment, concluding Farmers was obligated for forty percent of Haff's damages minus amounts previously paid. The court decided Farmers owed Haff $14,400 for underinsured benefits, which represented forty percent of the $161,000 in non-economic damages minus the $50,000 previously paid by Heritage. The court also concluded Farmers owed Haff $4,758.74 for no-fault benefits, which represented forty percent of the $29,000 in economic damages minus $6,841.26 previously paid by Farmers. Judgment was entered ordering Farmers to pay Haff $19,158.74, and Haff appealed the judgment.

[¶ 8] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Haff's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.[2]

## II

[¶ 9] We review this appeal under our standards for summary judgment, which is a procedure for promptly and expeditiously disposing of a controversy without a trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts will not alter the result. *Diegel v. City of West Fargo*, 546 N.W.2d 367,

370 (N.D.1996). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences that reasonably can be drawn from the evidence. *Id.* Questions of law are fully reviewable on appeal. *State Farm Mut. Auto. Ins. Co. v. Estate of Gabel*, 539 N.W.2d 290, 292 (N.D.1995). The interpretation of a statute is a question of law, which is fully reviewable. *Estate of Thompson*, 1998 ND 226, ¶ 6, 586 N.W.2d 847.

## III

[¶ 10] Haff argues Farmers, as his underinsured carrier, is responsible for all non-economic damages proximately caused by Hettich's negligence and not paid by Heritage, which, under *Polucha*, 60 N.D. 159, 233 N.W. 264 (1930), includes the damages attributable to the negligence of Haff's chiropractors. Haff thus argues Farmers is obligated for underinsured benefits for the sixty percent fault attributable to his chiropractors. Farmers responds N.D.C.C. § 32–03.2–02 effectively overruled *Polucha* and requires several apportionment of fault and damages among all persons who contributed to Haff's injuries.

## A

[¶ 11] In *Polucha*, 60 N.D. at 162–63, 233 N.W. at 265, an employee injured his ankle during the course of his employment. The employee received workers compensation benefits for his ankle injury and thereafter sued his physician for malpractice in treating the ankle injury. *Id.* at 162–63, 233 N.W. at 265. The physician defended, contending the employee's claim had been paid by the workers compensation bureau and the bureau was subrogated to the employee's rights against the physician. *Id.* at 163, 233 N.W. at 265–66.

---

2. Farmers paid Haff the $19,158.74 awarded under the judgment, and in August 1998, Haff filed a satisfaction of judgment. A party generally waives the right to appeal from a judgment by knowingly and voluntarily accepting substantial benefits under the judgment. *See, e.g., Bangen v. Bartelson*, 553 N.W.2d 754, 757 (N.D.1996).

Based on the parties' statements to this Court during oral argument and in supplemental filings after oral argument, however, we temporarily remanded to allow Haff to move to withdraw the satisfaction of judgment, and it has been withdrawn.

[¶ 12] The Court reversed a damage award to the employee and dismissed his malpractice action against the physician, concluding the employee was entitled to workers compensation benefits for the aggravation of his work injury by medical malpractice, and ruling the employee's receipt of workers compensation benefits transferred the employee's action against the physician to the bureau under the subrogation provisions of the workers compensation law. *Polucha*, 60 N.D. at 168–74, 233 N.W. at 268–71. The Court recognized the common law rule that an original tortfeasor was liable for aggravation of original injuries caused by the malpractice of a physician reasonably selected by the injured person, and stated the aggravation of the original injury was foreseeable and was not an independent, intervening act that broke the chain of causation between the original injury and the ultimate result. *Id.* at 164, 233 N.W. at 266. Under *Polucha*, an original tortfeasor's acts are the proximate cause of damages from aggravation of the initial injury by the malpractice of a physician reasonably selected by the injured person.

B

[¶ 13] In 1987, the Legislature enacted the modified comparative fault provisions of N.D.C.C. ch. 32–03.2. *See* 1987 N.D. Sess. Laws ch. 404. When Haff was injured, N.D.C.C. § 32–03.2–02 [3] provided:

*Modified comparative fault.* Contributory fault does not bar recovery in an action by any person to recover damages for death or injury to person or property unless the fault was as great as the combined fault of all persons who contribute to the injury, but any damages allowed must be diminished in proportion to the amount of contributing fault attributable to the person recovering. The court may, and when requested by any party, shall direct the jury to find separate special verdicts determining the amount of damages and the percentage of fault attributable to each person, whether or not a party, who contributed to the injury. The court shall then reduce the amount of such damages in proportion to the amount of fault attributable to the person recovering. When two or more parties are found to have contributed to the injury, the liability of each party is several only, and is not joint, and each party is liable only for the amount of damages attributable to the percentage of fault of that party, except that any persons who act in concert in committing a tortious act or aid or encourage the act, or ratifies or adopts the act for their benefit, are jointly liable for all damages attributable to their combined percentage of fault. Under this section, fault includes negligence, malpractice, absolute liability, dram shop liability, failure to warn, reckless or willful conduct, assumption of risk, misuse of product, and failure to avoid injury. Under this section, fault does not include any product liability, including product liability involving negligence or strict liability or breach of warranty for product defect.

[¶ 14] The modified comparative fault provisions significantly revised tort liability in North Dakota and shifted the focus from traditional tort doctrines to the singular inclusive concept of "fault." *See Hurt v. Freeland*, 1999 ND 12, ¶ 20, 589 N.W.2d 551; *Stewart v. Ryan*, 520 N.W.2d 39, 45 (N.D. 1994); *Champagne v. United States*, 513 N.W.2d 75, 79 (N.D.1994); *Erickson v. Schwan*, 453 N.W.2d 765, 768 (N.D.1990). "Fault" is specifically defined to include negligence and malpractice, *see* N.D.C.C. § 32–03.2–02, and the failure to exercise reasonable care to mitigate damages. N.D.C.C. § 32–03.2–01. Under the modified comparative fault provisions, the "[l]egal requirements of causal relation apply both to fault as the basis for liability and to contributory fault." N.D.C.C. § 32–03.2–01. Except for "in concert" action, N.D.C.C. § 32–03.2–02 replaces joint and several liability with several allocation of damages attributable to the percentage of fault of persons who contribut-

---

3.  As originally enacted, 1987 N.D. Sess. Laws ch. 404, §§ 2 and 3, included separate provisions for product liability actions and for other specified types of fault. In 1993, the Legislature combined those separate provisions into N.D.C.C. § 32–03.2–02. *See* 1993 N.D. Sess. Laws ch. 324, §§ 2, 5.

ed to the injury. *See Reed v. University of North Dakota,* 1999 ND 25, ¶ 34, 589 N.W.2d 880; *Hurt,* 1999 ND 12, ¶ 20, 589 N.W.2d 551; *Stewart,* at 45; *Target Stores v. Automated Maintenance Serv., Inc.,* 492 N.W.2d 899, 902 (N.D.1992); *Kavadas v. Lorenzen,* 448 N.W.2d 219, 223–24 (N.D.1989).

C

[¶ 15] In construing our modified comparative fault statutes, our primary duty is to ascertain the Legislature's intent, which initially must be sought from the statutory language. *See Stewart,* 520 N.W.2d at 45. We construe statutory provisions as a whole to give meaning to each word, phrase, clause, and sentence, if possible. *Id.*

[¶ 16] Section 32–03.2–02, N.D.C.C., unambiguously requires apportionment of fault and damages according to the percentage of fault attributable to each "person, whether or not a party, who contributed to the injury." Section 32–03.2–02, N.D.C.C., goes on to impose several liability on "two or more parties" who contributed to an injury. Section 32–03.2–02, N.D.C.C., thus distinguishes between "persons" and "parties."

[¶ 17] Citing the terms "persons" and "parties," Haff argues several allocation of fault and damages is necessary only when two or more "parties" are found to have contributed to an injury, and here only one "party" was found to have contributed to his injuries. Haff's argument ignores the plain language of N.D.C.C. § 32–03.2–02 requiring allocation of fault and damages to "persons" and renders meaningless the general rule for several allocation of damages except for "in concert" action. In *Reed,* 1999 ND 25, ¶¶ 32–34, 589 N.W.2d 880, we recently said "in concert" action required a common plan or design, and we declined to broadly construe the phrase, because a broad construction would render meaningless the general rule for several liability. When read together to give meaning to each word and phrase, the several allocation of damages to "parties" clearly recognizes liability in a lawsuit may be imposed only against parties, while fault and damages may be apportioned to any "person, whether or not a party, who contributed to the injury."

D

[¶ 18] Haff argues subsequent improper medical treatment is a direct and proximate consequence of an original tortfeasor's acts under *Polucha.* His argument ignores the significant revision of tort liability under the modified comparative fault provisions. We decline to construe the "[l]egal requirements of causal relation" in N.D.C.C. § 32–03.2–01 to impose liability on an original tortfeasor for an intervening cause like medical malpractice that the original tortfeasor was deemed to foresee under common law, because that interpretation would render meaningless the language for determining the percentage of fault and damages attributable to each person and for allocating several liability to each party for the amount of damages attributable to the percentage of fault of that party. *See Reed,* 1999 ND 25, ¶ 34, 589 N.W.2d 880 (declining to broadly construe "in concert" language of N.D.C.C. § 32–03.2–02 to render meaningless the general rule for several liability).

E

[¶ 19] Haff argues an injured party's duty to mitigate carries the original tortfeasor's implied consent, ratification, or adoption of the injured party's mitigation, including malpractice by a reasonably selected medical care provider. Section 32–03.2–01, N.D.C.C., specifically defines fault to include the failure to exercise reasonable care to mitigate damages, which manifests a legislative intent the duty to mitigate does not carry an implied ratification or consent to malpractice by a physician selected by the injured person. Haff's argument effectively seeks to impose joint and several liability under N.D.C.C. § 32–03.2–02 for "in concert" action. We reject Haff's argument an injured party's duty to mitigate damages evidences an original tortfeasor's ratification or adoption of a subsequent medical care provider's negligence. *See Reed,* 1999 ND 25, ¶ 34, 589 N.W.2d 880.

F

[¶ 20] Haff's reliance on *Holden v. Balko,* 949 F.Supp. 704 (S.D.Ind.1996), is misplaced.

In *Holden* at 710–14, a federal district court ruled Indiana's Comparative Fault Act, Ind. Code 34–4–33–1 et seq., did not modify or supersede the common law rule imposing liability on an original tortfeasor for aggravation of a victim's injury by a physician's negligent treatment of the injury. *See also Edwards v. Sisler*, 691 N.E.2d 1252, 1254–55 (Ind.App.1998) (adopting rationale of *Holden* ).

[¶ 21] Under Indiana law, however, medical malpractice actions are specifically excluded from Indiana's Comparative Fault Act. *See Holden*, 949 F.Supp. at 707. N.D.C.C. § 32–03.2–02 expressly defines fault to include malpractice. Because our modified comparative fault statutes specifically define fault to include malpractice, we are not persuaded the rationale of *Holden* applies to the interpretation of our law.

### G

[¶ 22] Haff raises several policy reasons he claims support his interpretation of our modified comparative fault provisions, including his argument a contrary interpretation would undermine the physician-patient relationship for physicians who treat persons injured in accidents. We have often said the Legislature is much better suited than courts to identify the public policy in this state. *See Martin v. Allianz Life Ins. Co.*, 1998 ND 8, ¶ 20, 573 N.W.2d 823.

### H

[¶ 23] When N.D.C.C. § 32–03.2–02 is construed as a whole to give meaning to each word and phrase, we believe the shift in focus from traditional tort doctrines to the singular inclusive concept of fault and the change in allocation of damages from joint and several to several liability in proportion to the percentage of fault attributable to each party has changed the tort principles underlying *Polucha*. We conclude N.D.C.C. § 32–03.2–02, when read as a whole, requires apportionment of damages based on the percentages of fault attributable to the original tortfeasor and medical care providers who negligently treat the original injury. We therefore hold the trial court correctly applied N.D.C.C.

§ 32–03.2–02 to Haff's claim for non-economic damages.

### IV

[¶ 24] Haff argues N.D.C.C. § 32–03.2–02 violates federal and state guarantees of substantive due process.

[¶ 25] In *City of Fargo v. Stensland*, 492 N.W.2d 591, 594 (N.D.1992), the Court recognized it had never abandoned substantive due process as a state constitutional standard. *See Arneson v. Olson*, 270 N.W.2d 125, 132 (N.D.1978); *Johnson v. Elkin*, 263 N.W.2d 123, 127–28 (N.D.1978). In *Stensland* at 594 (quoting *Menz v. Coyle*, 117 N.W.2d 290, 299 (N.D.1962)), the Court said:

> When reviewing substantive due process arguments not involving fundamental rights, we look to see if the State acts in an arbitrary or unreasonable manner in exercising its police power.... To declare a statute unconstitutional on substantive due process grounds, "it must appear that the Legislature had no power to act in the particular matter or, having power to act, that such power was exercised in an arbitrary, unreasonable, or discriminatory manner and that the method adopted had no reasonable relation to attaining the desired result."

*See also Nebbia v. New York*, 291 U.S. 502, 537, 54 S.Ct. 505, 78 L.Ed. 940 (1934) (stating standard for evaluating federal due process claim requires law to have reasonable relation to a proper legislative purpose and to be neither arbitrary nor discriminatory).

[¶ 26] Haff concedes North Dakota has a legitimate governmental interest in apportioning liability among those responsible for a victim's injuries and damages. He argues, however, N.D.C.C. § 32–03.2–02 is not rationally related to accomplishing the legitimate governmental interest.

[¶ 27] In *Kavadas*, 448 N.W.2d at 222–24, the Court considered a state equal protection challenge to the classification in N.D.C.C. § 32–03.2–02, which eliminated joint and several liability except for "in concert" tortious acts. The Court concluded the classification of joint and several versus several liability was not a limitation on the authority of an

injured party to bring an action against a tortfeasor, was not patently arbitrary, and had a rational relationship to a legitimate governmental purpose under the rational basis standard of review:

> We believe that a statutory scheme which makes a tortfeasor's liability for damages dependent upon the degree of fault of that tortfeasor and not upon the degree of solvency of other tortfeasors is not patently arbitrary and bears a rational relationship to the legitimate legislative goal of improving "the method of determining and fixing responsibility for and paying of damages." Moreover, in our view, this legislative classification, which eliminates joint and several liability unless two or more tortfeasors act in concert in committing a tortious act or aid or encourage the act, is also rationally related to "fixing responsibility for and paying of damages." The difference in degree and type of conduct necessary to trigger the benefits of joint and several liability is rationally related to the imposition of the broader responsibility of joint and several liability for that conduct.

*Kavadas*, at 223.

[¶ 28] We are not persuaded Haff's substantive due process argument requires a different analysis. We reject the rationale of *Plumb v. Fourth Jud. Dist.*, 279 Mont. 363, 927 P.2d 1011, 1019–21 (1996), and *Newville v. State Dep't of Family Servs.*, 267 Mont. 237, 883 P.2d 793, 803 (1994), which held different versions of Montana's comparative fault law violated substantive due process because they failed to afford procedural safeguards to injured parties and nonparties. In both cases, the court concluded Montana's statutes were not rationally related to the legitimate governmental objective of apportioning liability among those responsible for an injured person's damages, because the statutes permitted apportionment of liability to nonparties without adequate procedural safeguards to ensure the apportionment was an accurate reflection of comparative fault. *Plumb*, 927 P.2d at 1019–21; *Newville*, 883 P.2d at 802–03. The court explained the assignment of fault to nonparties without procedural safeguards could result in an inaccurate and unreliable apportionment of fault and could adversely impact both injured parties and nonparties. *Plumb* at 1020–21; *Newville* at 802–03.

[¶ 29] In our view, the Montana Supreme Court's application of the rational relation test in those cases is too broad. As *Kavadas*, 448 N.W.2d at 223, explained in the context of an equal protection challenge, N.D.C.C. § 32–03.2–02 does not infringe upon important substantive rights and is rationally related to the legitimate legislative goal of improving the method of determining and fixing responsibility for fault and damages. N.D.C.C. § 32–03.2–02 directly apportions responsibility for damages based upon fault, and unless persons act in concert, they are responsible only for damages attributable to their percentage of fault. The statute accomplishes its stated purpose of apportioning liability among those responsible for a victim's injuries.

[¶ 30] Although Haff contends apportionment of fault to unnamed parties imposes an unfair burden on him, under our modified comparative fault law the plaintiff is responsible for naming appropriate parties in a lawsuit. *See Target Stores*, 492 N.W.2d at 904 (holding in absence of claim of concerted action under N.D.C.C. § 32–03.2–02, defendant is not entitled to make third party claim for contribution against additional defendants not named by plaintiff). We conclude N.D.C.C. § 32–03.2–02 bears a reasonable relation to the desired result of apportioning liability and damages among those persons responsible for another person's injuries and is not arbitrary, unreasonable, or discriminatory. We therefore hold N.D.C.C. § 32–03.2–02 does not violate substantive due process.

## V

[¶ 31] Haff argues N.D.C.C. § 32–03.2–02 does not affect Farmers' obligation to pay him basic no-fault benefits for injuries arising out of the operation of a motor vehicle. Farmers responds North Dakota's Auto Accident Reparations Act, N.D.C.C. ch. 26.1–41, provides no-fault benefits for injuries arising out of the operation of a motor vehi-

cle, but not for injuries from medical malpractice.

[¶ 32] Farmers is Haff's no-fault insurer, required by N.D.C.C. § 26.1–41–06, to "pay basic no-fault benefits without regard to fault for economic loss resulting from ... [a]ccidental bodily injury sustained ... by the owner of the motor vehicle." Basic no-fault benefits are benefits for economic loss resulting from accidental bodily injury and may not exceed $30,000 for any one person. N.D.C.C. § 26.1–41–01(2). Accidental bodily injury means "bodily injury ... arising out of the operation of a motor vehicle." N.D.C.C. § 26.1–41–01(1). Economic loss means "medical expenses, rehabilitation expenses, work loss, replacement services loss, survivors' income loss, survivors' replacement services loss, and funeral, cremation, and burial expenses." N.D.C.C. § 26.1–41–01(2).

[¶ 33] Our no-fault statutes are intended to provide adequate compensation to victims of motor vehicle accidents, see *Kroh v. American Fam. Ins.*, 487 N.W.2d 306, 309 (N.D.1992), *Moser v. Wilhelm*, 300 N.W.2d 840, 847 (N.D.1980), and to avoid protracted litigation over issues of fault or causation by removing the bulk of motor vehicle accidents from the tort system. *See Reisenauer v. Schaefer*, 515 N.W.2d 152, 155 (N.D.1994); *Weber v. State Farm Mut. Auto. Ins. Co.*, 284 N.W.2d 299, 301 (N.D.1979). *See generally* Smith, *"North Dakota Auto Accident Reparations Act"—North Dakota's No-Fault Insurance Law*, 52 N.D.L.Rev. 147 (1975). In *Reisenauer*, 515 N.W.2d at 155, we explained a key aspect of the no-fault system was to transfer victim compensation from fault-based tort recovery to compulsory no-fault insurance.

[¶ 34] We construe our no-fault statutes in harmony with other statutes. *See Kroh*, 487 N.W.2d at 310 (construing no-fault statutes in harmony with workers compensation statutes). When there is a conflict between statutes, we construe specific statutes to control general statutes. *See* N.D.C.C. § 1–02–07.

[¶ 35] The modified comparative fault provisions of N.D.C.C. ch. 32–03.2 generally sketch a fault-based tort system for apportionment of fault and damages, while the no-fault provisions of N.D.C.C. ch. 26.1–41 specifically pertain to personal injuries sustained in motor vehicle accidents. *Cf.* N.D.C.C. § 32–03.2–02.1 (limiting application of comparative fault for property damage sustained in motor vehicle accident). The plain language of the no-fault statutes specifically requires payment of basic no-fault benefits "without regard to fault." N.D.C.C. § 26.1–41–06. We believe the purpose of the no-fault system to transfer victim compensation for personal injuries arising out of motor vehicle accidents from a fault-based tort recovery to a compulsory no-fault insurance would be seriously undermined if our no-fault statutes applied modified comparative fault principles to medical malpractice in treating personal injuries sustained in a motor vehicle accident.

[¶ 36] We agree with the rationale of *Varner v. Nationwide Mut. Ins. Co.*, 340 Pa.Super. 211, 489 A.2d 918, 920–21 (1985) (citations omitted):

[T]he alleged medical malpractice here, resulting in severe infection, occurred in the treatment of the injuries sustained in a motor vehicle accident. But for the accident and injuries, appellee would not have been subjected to medical treatment, competent or otherwise. It is much more probable that an individual will be hospitalized than assaulted as a result of operating a motor vehicle.

We recognize that the interpretation of "maintenance and use of a motor vehicle" is not easily derived. Where the words of a statute are unclear, we can determine legislative intent by considering the "object to be attained," and the "consequences of a particular interpretation." ... In recognizing the significant effect of motor vehicle transportation on intrastate commerce, the need for "maximum feasible restoration" of all persons injured in motor vehicle accidents, and the need for a prompt, inexpensive and comprehensive system of compensating accident victims, the General Assembly hoped to provide a "Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims...." ... Extending no-fault benefits to accident victims whose injuries

are aggravated by medical malpractice supports this policy particularly in light of the likelihood of medical treatment.

Moreover, the consequences of not extending no-fault benefits in these cases would encourage carriers to protest often and vigorously that injuries were compounded by medical treatment. That could destroy a system designed for prompt, low-cost and "maximum possible restoration."

[¶ 37] We construe "bodily injury ... arising out of the operation of a motor vehicle" to extend basic no-fault benefits to eligible persons under N.D.C.C. § 26.1–41–06 who receive negligent medical treatment for personal injuries sustained in a motor vehicle accident. Under N.D.C.C. § 26.1–41–01(2), basic no-fault benefits for economic loss may not exceed $30,000 for any one person. We hold Farmers' no-fault policy requires it to pay basic no-fault benefits to Haff for all the $29,000 in economic damages awarded by the jury. We reverse the part of the judgment apportioning the economic damage award, and we remand for the trial court to order Farmers to pay the unpaid balance of Haff's $29,000 in economic damages.

## VI

[¶ 38] We affirm in part, reverse in part, and remand for entry of judgment consistent with this opinion.

[¶ 39] VANDE WALLE, C.J, and NEUMANN and KAPSNER, JJ., concur.

KAPSNER, Justice, concurring.

[¶ 40] If I thought this court were the appropriate body to announce policy for the state, I would adopt the policy suggested by Justice Maring's dissent that we ought to retain the common law rule imposing liability on the original tortfeasor for the foreseeable intervening negligence of a medical provider. I would do so because I believe the opposite policy has the unfortunate result outlined in paragraph 53 of the dissent. However, since the legislature has included malpractice under the definition of fault in N.D.C.C. § 32–

03.2–02 which requires that the burden of fault be allocated, I must concur.

[¶ 41] NEUMANN, J., concurs.

MARING, Justice, concurring in part and dissenting in part.

[¶ 42] I concur in the majority's conclusion N.D.C.C. § 32–03.2–02 does not affect Farmers' obligation to pay no-fault benefits. I dissent from the majority's opinion concluding N.D.C.C. § 32–03.2–02 has superseded the common law rule that a tortfeasor cannot reduce his own liability by showing those who medically treat the injured person were negligent in providing such treatment.

[¶ 43] The majority interprets N.D.C.C. § 32–03.2–02 to not "impose liability on an original tortfeasor for an intervening cause like medical malpractice that the original tortfeasor was deemed to foresee under common law." To reach this interpretation, the majority concludes the statute is unambiguous because N.D.C.C. § 32–03.23–02 includes the term "malpractice" in the definition of "fault" and requires the apportionment of fault and damages according to the percentage of fault attributable to each "person, whether or not a party, who contributed to the injury." In my opinion, however, the Legislature's intent cannot be unambiguously ascertained from this statute's language.

[¶ 44] Our primary purpose in construing a statute is to ascertain the Legislature's intent. *Kinney Shoe Corp. v. State,* 552 N.W.2d 788 (N.D.1996). When a statute is ambiguous, we look to various extrinsic aids, such as the legislative history, the object sought to be attained, or the circumstances under which the statute was enacted, in our determination of legislative intent. *See* N.D.C.C. § 1–02–39. Statutes should be considered "as a whole and in relation to other provisions, with each provision harmonized, if possible, to avoid conflicts." *Dundee Mutual Ins. Co. v. Balvitsch,* 540 N.W.2d 609, 612 (N.D.1995).

[¶ 45] In 1987 the Legislature enacted a number of statutes as "tort reforms." The tort reform movement was intended to reduce "frivolous" litigation and improve the method of allocating responsibility for and

paying of damages. *See Target Stores v. Automated Maintenance Serv., Inc.,* 492 N.W.2d 899, 902 (N.D.1992). As a result, joint liability of concurrent tortfeasors was changed to several liability in the absence of "in concert" action. *Id.;* 1987 N.D. Sess. Laws ch. 404, §§ 2 and 3; N.D.C.C. §§ 32–03.2–02 and 32–03.2–03. This "tort reform" was effective until June 30, 1993, when it was set to expire. 1987 N.D. Sess. Laws ch. 404, § 15. In 1993, the Legislature repealed the sunset provision, repealed N.D.C.C. §§ 9–10–07 and § 32–03–07, and amended and reenacted N.D.C.C. § 32–03.2–02 relating to modified comparative fault and the elimination of joint liability for concurrent tortfeasors. 1993 N.D. Sess. Laws ch. 324, §§ 1, 2, and 5.

[¶ 46] As noted by the majority, the modified comparative fault statutes revised tort liability in our state, shifting the focus from traditional tort doctrines to the singular inclusive concept of "fault." "Fault" is defined in N.D.C.C. §§ 32–03.2–01 and –02:

> § 32–03.2–01. Definition. As used in this chapter, "fault" includes acts or omissions that are in any measure negligent or reckless towards the person or property of the actor or others, or that subject a person to tort liability or dram shop liability. The term also *includes strict liability for product defect, breach of warranty, negligence or assumption of risk, misuse of a product for which the defendant otherwise would be liable, and failure to exercise reasonable care to avoid an injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.* (Emphasis added.)
>
> § 32–03.2–02. Modified comparative fault.
>
> . . . .
>
> Under this section, fault *includes negligence, malpractice, absolute liability, dram shop liability, failure to warn, reckless or willful conduct, assumption of risk, misuse of product, failure to avoid injury, and product liability,* including product liability involving negligence or strict liability or breach of warranty for product defect. (Emphasis added.)

It is unclear why "malpractice" was included in the definition of "fault" in the modified comparative fault statute but not included in the statute specifically defining the term "fault." The inconsistent definitions of "fault" create an ambiguity and do not enable us to ascertain the clear intent of the Legislature from the plain language of the statute, especially when the effect of that interpretation is to abrogate long held principles of traditional tort doctrine.

[¶ 47] Further ambiguity arises when one considers the common law rule—that original tortfeasors are liable for the foreseeable negligence of reasonably selected medical care providers—is premised on principles of proximate causation. In *Polucha v. Landes,* 60 N.D. 159, 233 N.W. 264, 268 (1930), this Court reasoned "[i]t is, therefore, not such an independent, intervening act of a third party as to break the *chain of causation* between the primary injury and the ultimate consequence or result." (Emphasis added.) In other words, the original tortfeasor is liable for subsequent negligent medical treatment because such a consequence is foreseeable as a matter of law. The New Mexico Supreme Court aptly summarized the rule:

> When a person causes an injury to another which requires medical treatment, it is foreseeable that the treatment, whether provided properly or negligently, will cause additional harm. *Ash v. Mortensen,* 24 Cal.2d 654, 150 P.2d 876, 877 (1944); *see also* Keeton et al. § 44, at 309 ("It would be an undue compliment to the medical profession to say that bad surgery is no part of the risk of a broken leg."). Thus, premised upon the concept that the original tort is a *proximate cause* of the harm attributable to negligent treatment, courts have held the original tortfeasor liable both for the original injury and for the harm caused by negligent medical treatment. (Citations omitted.)

*Lujan v. Healthsouth Rehabilitation Corp.,* 120 N.M. 422, 902 P.2d 1025, 1029 (1995) (emphasis added). In this regard, I do not understand the majority characterizing subsequent negligence by a treating physician to be an "intervening" cause.

[¶ 48] Because the *Polucha* rule is a principle of proximate causation and N.D.C.C. § 32–03.2–01 provides that the "legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault," I cannot agree the unambiguous intent of the Legislature was to abrogate the *Polucha* rule when it enacted the modified comparative fault statute. *Cf. Stewart v. Ryan*, 520 N.W.2d 39, 51 (N.D.1994) (Levine, J., concurring) ("[t]he change from contributory negligence to modified comparative fault had no effect on proximate causation requirements").

[¶ 49] When a statute is ambiguous we look to various extrinsic aids, such as the legislative history, the circumstances under which the statute was enacted, or the object sought to be attained in our determination of legislative intent. *See* N.D.C.C. § 1–02–39. The legislative history of the 1987 tort reform provisions shed no light on the issue of whether the Legislature clearly intended to abrogate the common law rule that an original tortfeasor is liable for aggravation of original injuries caused by the malpractice of a physician reasonably selected by the injured party. We do know, however, of the Legislature's pressing concern to stem the tide of medical malpractice lawsuits in the late 1980's. *See, e.g.,* N.D.C.C. § 28–01–46 (requiring a claimant to obtain an admissible expert opinion to support allegations of professional negligence within three months of commencement of the action or at a later date upon a showing of good cause or face dismissal of the action); N.D.C.C. § 32–42–03 (requiring an attempt at alternative dispute resolution of the claim prior to commencement of a malpractice action); N.D.C.C. § 28–01–18 (statute of limitations for medical malpractice claims is two years (not six as for other personal injury claims) after the claim for relief has accrued).

[¶ 50] It seems unlikely the Legislature intended, at a time when it was concerned about the number of medical malpractice claims being filed, to abrogate the common law rule that original tortfeasors are liable for the foreseeable negligence of reasonably selected medical care providers when it enacted the modified comparative fault statute.

I also do not believe the Legislature intended to foster additional lawsuits. The majority's opinion changes the entire practice of tort law in this area. Instead of an action solely against the original tortfeasor, the injured person will now be under substantial pressure to bring an additional action against the medical provider of negligent treatment in the event the original tortfeasor raises a nonparty defense. In addition, because of the shorter statute of limitations for medical negligence claims, plaintiffs will be forced to commence actions for personal injury sooner, to be assured of being able to add the medical provider as a party if the tortfeasor raises the provider's standard of care as a defense.

[¶ 51] Further, it is illogical to compare the fault of the original tortfeasor with the treating physician under these circumstances. This case does not involve one indivisible injury brought about by concurrent negligence, but rather it involves the negligence of a driver resulting in an accident and the subsequent negligence of a physician resulting in malpractice. The accident caused the injury and the malpractice caused enhancement of the injury. The damages should be reduced only by the separate injury attributable to the physician, if at all.

[¶ 52] The majority distinguishes *Holden v. Balko*, 949 F.Supp. 704 (S.D.Ind.1996) based upon the inclusion of "malpractice" in our statutory language. Based on that distinction and its conclusion our statutory language is unambiguous, it disregards the sound policy reasons underlying the *Holden* decision. The majority opinion does not cite one jurisdiction that supports its decision. I believe the *Holden* rationale supports an interpretation of the statute which retains the common law rule imposing liability on the original tortfeasor for the foreseeable negligence of a medical provider. *See also Edwards v. Sisler*, 691 N.E.2d 1252, 1255 (Ind.Ct.App.1998).

[¶ 53] The *Holden* court discussed the consequences of interpreting Indiana's comparative fault statute to abrogate this common law rule. The first consequence would be the unfair burden it places on tort victims, who will now be in the "unenviable position" of not only bearing the responsibility of mitigating their damages by utilizing good faith

and reasonable care in the selection of medical care providers, but also "second-guessing ... physicians in order to determine whether the doctor properly diagnosed the injury." *Holden*, 949 F.Supp. at 711. Such an interpretation will also have drastic consequences for North Dakota tort law and practice. Our tort law will now allow defendants who are not patients of the doctor to put on trial the quality of the doctor's care of the injured person without the doctor as a party. *Id.* In many cases, the original tortfeasor will be a stranger to the physician-patient relationship and have only a financial interest in putting to test the physician's standard of care for the victim. *Id.* The physician-patient relationship will not be spared either; every car accident victim in an emergency room now presents the likely event the treating doctor will eventually be made a party to the lawsuit. The *Holden* decision accurately prognosticates the unfortunate but inevitable consequences of the majority's decision today; consequences the Legislature surely did not intend when it passed the "tort reform" provisions in 1987.

[¶ 54] Even assuming the statute is unambiguous, our established rules of statutory construction presume the Legislature does not intend unreasonable or unjust results. N.D.C.C. § 1–02–38. Here the result of abrogating this common law rule is that the original tortfeasor, who has the benefit of the law of mitigation of damages, and who places the injured person at risk for treatment, escapes liability for the natural consequences of his original negligence. Also, allowing the defendant to allege medical negligence when the statute of limitations has run for filing a medical malpractice claim, unfairly prejudices the plaintiff's right to a full recovery for his injuries. Moreover, many procedural questions exist such as the necessity for pleading the "non party" defense, the timeliness of expert witness disclosure, compliance with medical malpractice mediation, proper jury instructions, settlement, etc. Doctors and other medical care providers will feel the squeeze of the defendant's demand for financial contribution toward claim resolution and the threat of litigation by the injured person.

[¶ 55] In view of the significance of this issue and the impact it will have on North Dakota tort practice, I cannot conclude the Legislature intended this derogation of existing common law without a clearer statement to that effect. I, therefore, dissent.

[¶ 56] Mary Muehlen Maring